## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------X

NANCY MILLER-RICH,

        Plaintiff,

-against-

ALTUM PHARMACEUTICALS
INC., BETTERLIFE PHARMA INC.,
AHMAD DOROUDIAN, STEPHEN
DATTELS, JOHN AND JANE
DOES 1-50 and JOHN DOE
CORPORATIONS 1-20,

        Defendant.

-----------------------------------------------X

Hon. Jennifer L. Rochon

Civil Action No: 22-CV-3473-JLR

**ORAL ARGUMENT REQUESTED**

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT STEPHEN DATTELS' MOTION TO DISMISS

**McCARTER & ENGLISH, LLP**
John C. Kelly, Esq. (PHV Forthcoming)
Brian W. Carroll, Esq.
Worldwide Plaza
825 Eighth Avenue, 31st Floor
New York, New York 10019
Telephone: (212) 609-6800
Facsimile: (212) 609-6921
jkelly@mccarter.com
bcarroll@mccarter.com
*Attorneys for Defendant Stephen Dattels*

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ........................................................................ ii

PRELIMINARY STATEMENT ................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND .............................. 3

LEGAL ARGUMENT ............................................................................ 6

I.   MR. DATTELS IS NOT SUBJECT TO PERSONAL
     JURISDICTION IN NEW YORK ............................................... 7

     A.   No General Jurisdiction Exists Over Mr. Dattels ...................... 7

     B.   Mr. Dattels Likewise Has No Plausible Contacts
          with New York that Give Rise to Specific
          Jurisdiction ............................................................................ 8

     C.   Requiring Mr. Dattels to Defend Against This
          Action Would Exceed Constitutional Limits .......................... 10

     D.   Plaintiff Cannot Assert Jurisdiction Over Mr.
          Dattels Under Federal Rule of Civil Procedure
          4(k)(2) .................................................................................. 13

II.  THIS ACTION SHOULD BE DISMISSED UNDER
     THE DOCTRINE OF FORUM NON CONVENIENS
     INSOFAR AS BRITISH COLUMBIA, NOT NEW
     YORK, IS AT THE HEART OF THE DISPUTEA ........................ 18

     A.   Plaintiffs' Choice of Forum Is Not Entitled to
          Substantial Deference Because the Lawsuit Lacks
          Any Legitimate Connection to New York .............................. 19

     B.   Canadian Courts Provide an Adequate Alternative
          Forum .................................................................................... 21

     C.   Public and Private Interests Weigh in Favor of
          Dismissal .............................................................................. 22

ME1 43256084v.1

III.  PLAINTIFF'S CLAIMS AGAINST DEFENDANT
      DATTELS SHOULD LIKEWISE BE DISMISSED
      PURSUANT TO RULE 12(B)(6) AND RULE 9(B) ........................24

      A.    Securities Fraud (First Claim)...................................................25

      B.    Fraud (Fourth Claim) ...............................................................27

CONCLUSION .........................................................................................30

ME1 43256084v.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Asahi Metal Indus., Co., Ltd. v. Superior Ct. of Cal., Solano Cnty.,
480 U.S. 102 (1987)..........................................................................................12

Ashcroft v. Iqbal,
556 U.S. 662 (2009)..........................................................................................24

Beach v. Citigroup Alt. Invs. LLC,
2014 WL 904650 (S.D.N.Y. Mar. 7, 2014).........................................................7

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007)..........................................................................................24

Berdeaux v. OneCoin Ltd.,
561 F. Supp. 3d 379 (S.D.N.Y. 2021) .........................................................28, 29

BFI Grp. Divino Corp. v. JSC Russian Aluminum,
298 F. App'x 87 (2d Cir. 2008)..........................................................................21

BFI Grp. Divino Corp. v. JSC Russian Aluminum,
481 F. Supp. 2d 274 (S.D.N.Y. 2007) ...............................................................23

Charles Schwab Corp. v. Bank of Am. Corp.,
883 F.3d 68 (2d Cir. 2018) ...............................................................................12

Chirag v. MTMarida Marguerite Schiffahrts,
604 F. App'x 16 (2d Cir. 2015)............................................................................7

Chloe v. Queen Bee of Beverly Hills, LLC,
616 F.3d 158 (2d Cir. 2010) ...............................................................10, 11, 12

Daimler AG v. Bauman,
571 U.S. 117 (2014)........................................................................................7, 8

DiStefano v. Carozzi N. Am., Inc.,
286 F.3d 81 (2d Cir. 2001) .................................................................................7

Fox v. Boucher,
794 F.2d 34 (2d Cir.1986) ................................................................................17

Gilbert v. Indeed, Inc.,
    513 F. Supp. 3d 374 (S.D.N.Y. 2021) ...........................................................9, 10

Gilstrap v. Radianz Ltd.,
    443 F. Supp. 2d 474 (S.D.N.Y. 2006), aff'd, 233 F. App'x 83 (2d
    Cir. 2007) ........................................................................................................23

Gross v. British Broadcasting Corp.,
    386 F.3d 224 (2d Cir. 2004) ............................................................................18

Hefler v. Wells Fargo & Co.,
    2018 WL 1070116 (N.D. Cal. Feb. 27, 2018) .................................................26

Holzman v. Guoqiang Xin,
    2015 WL 5544357 (S.D.N.Y. Sept. 18, 2015) .................................................22

In re iAnthus Capital Holdings, Inc. Sec. Litig.,
    2022 WL 4539119 (S.D.N.Y. Sept. 28, 2022) .................................................21

Iragorri v. United Tech. Corp.,
    274 F.3d 65 (2d Cir. 2001) ........................................................................19, 20

Janus Cap. Grp., Inc. v. First Derivative Traders,
    564 U.S. 135 (2011)............................................................................................1

Kernan v. Kurz-Hastings, Inc.,
    175 F.3d 236 (2d Cir. 1999) ............................................................................10

Lanza v. Drexel & Co.,
    479 F.2d 1277 (2d Cir. 1973) ..........................................................................26

LaSala v. TSB Bank, PLC,
    514 F. Supp. 2d 447 (S.D.N.Y. 2007) ........................................................20, 21

Libertarian Party of Erie Cty. v. Cuomo,
    970 F.3d 106 (2d Cir. 2020) ............................................................................24

Livingston v. Cablevision Sys. Corp.,
    966 F. Supp. 2d 208 (E.D.N.Y. 2013) .............................................................26

Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC,
    797 F.3d 160 (2d Cir. 2015) ........................................................................28, 29

In re M/V MSC FLAMINIA,
   107 F. Supp. 3d 313 (S.D.N.Y. 2015) ................................................................15

Mareno v. Rowe,
   910 F.2d 1043 (2d Cir. 1990) ............................................................................10

Matana v. Merkin,
   957 F. Supp. 2d 473 (S.D.N.Y. 2013) ...............................................................27

Mayes v. Leipziger,
   674 F.2d 178 (2d Cir.1982) ...............................................................................17

Norvel Ltd. v. Ulstein Propeller AS,
   161 F. Supp. 2d 190 (S.D.N.Y. 2001) ..................................................................7

In re Optimal U.S. Litig.,
   2011 WL 4908745 (S.D.N.Y. Oct. 14, 2011)...............................................26, 27

Owens v. Turkiye Halk Bankasi A.S.,
   2021 WL 638975 (S.D.N.Y. Feb. 16, 2021) ......................................................20

Peregrine Myanmar Ltd. v. Segal,
   89 F.3d 41 (2d Cir. 1996) ..................................................................................18

Porina v. Marward Shipping Co.,
   2006 WL 2465819 (S.D.N.Y. Aug. 24, 2006), aff'd, 521 F.3d 122
   (2d Cir. 2008)...............................................................................................14, 15

RIGroup LLC v. Trefonisco Mgmt. Ltd.,
   949 F. Supp. 2d 546 (S.D.N.Y. 2013), aff'd, 559 F. App'x 58 (2d
   Cir. 2014) ...........................................................................................................19

In re Royal Grp. Techs. Sec. Litig.,
   2005 WL 3105341 (S.D.N.Y. Nov. 21, 2005).....................................................21

Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.,
   549 U.S. 422 (2007)............................................................................................18

SPV Osus, Ltd. v. UBS AG,
   882 F.3d 333 (2d Cir. 2018) ................................................................................8

ME1 43256084v.1

Sussman v. Bank of Isr.,
   801 F. Supp. 1068 (S.D.N.Y. 1992), aff'd, 990 F.2d 71 (2d Cir.
   1993) ...................................................................................................19

TAGC Mgmt., LLC v. Lehman,
   2011 WL 3796350 (S.D.N.Y. Aug. 24, 2011).............................................15, 16

Tamam v. Fransabank Sal,
   677 F.Supp.2d 720 (S.D.N.Y.2010) ...................................................15

In re Terrorist Attacks on Sept. 11, 2001,
   349 F. Supp. 2d 765 (S.D.N.Y.) .........................................................11

United States v. Swiss Am. Bank, Ltd.,
   191 F.3d 30 (1st Cir.1999)...............................................................14

Varnelo v. Eastwind Transp., Ltd.,
   2003 WL 230741 (S.D.N.Y. Feb. 3, 2003) .......................................23

Waldman, v. PLO,
   835 F.3d 317 (2d Cir. 2016) ..............................................................7

Wamai v. Indus. Bank of Korea,
   2021 WL 3038402 (S.D.N.Y. July 14, 2021)..............................18, 22

**Rules and Statutes**

15 U.S.C. § 78u-4(b)...............................................................................26

15 U.S.C. § 78j(b) ..............................................................................6, 24

15 U.S.C. § 78t(e) ....................................................................................6

17 C.F.R. § 240.10b-5......................................................................6, 24, 25

CPLR § 302(a) .....................................................................................8, 9

CPLR § 327(a) ..........................................................................................3

CPLR § 3211(a)(8)....................................................................................3

Federal Rule of Civil Procedure 4(k)(2) ............................................*passim*

Federal Rule of Civil Procedure 9(b)...................................24, 27, 28, 30

ME1 43256084v.1

Federal Rule of Civil Procedure 12(b)............................................................1, 7, 24

Private Securities Litigation Reform Act [PSLRA] ...............................................25

ME1 43256084v.1

Defendant Stephen Dattels ("Mr. Dattels") respectfully submits this Memorandum of Law in support of his Motion to Dismiss Plaintiff Nancy Miller-Rich's ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) & (6) and the doctrine of *forum non conveniens*.

## PRELIMINARY STATEMENT

This is a dispute in which Plaintiff alleges that Altum Pharmaceuticals Inc. ("Altum"), BetterLife Pharma Inc. ("BetterLife"), Ahmad Doroudian ("Doroudian") – all of whom reside in Canada – and Mr. Dattels – a Canadian citizen alleged to have an address in Florida – allegedly engaged in a course of conduct in Canada, including making certain fraudulent misrepresentations in Canadian securities filings regarding Canadian entities, that resulted in, among other things, "the loss of value of [Plaintiff's] Altum shares." Despite the fact that this dispute is inextricably tied to British Columbia – with all key documents and witnesses located there – Plaintiff has inexplicably chosen to bring claims against Defendants in this Court (in addition to the Supreme Court of New York), rather than the more appropriate Canadian forum.

As to Mr. Dattels, specifically, Plaintiff's Complaint is fatally flawed on several independent grounds. *First,* this Court lacks personal jurisdiction over Mr. Dattels. Indeed, Mr. Dattels does not conduct business in New York – with Plaintiff

or anyone else – and thus does not have the requisite jurisdictional contacts with this forum.

*Second,* Plaintiff's claims should be adjudicated (if at all) in British Columbia, not this forum, in accordance with the doctrine of *forum non conveniens*. Indeed, this dispute has no cognizable nexus with New York given that: the events and actions complained of occurred in British Columbia, Defendants Altum, BetterLife, and Doroudian each reside in British Columbia, Dattels resides in Bermuda, and the majority of evidence and key witnesses are located in British Columbia. This lawsuit (if permitted to proceed) would unduly burden the Court and the foreign Defendants, when British Columbia is an adequate alternative forum.

*Finally,* even if Plaintiff could overcome the dispositive jurisdictional hurdles, she has failed to state any viable claim against Mr. Dattels. Among other defects, the Complaint's allegations are insufficient as a matter of law to hold Mr. Dattels liable for a SEC Rule 10b-5(b) federal securities violation as the "maker" of any of the complained-of "false and misleading statements and omissions." Nor does the Complaint allege with particularity any fraudulent misrepresentations by Mr. Dattels, let alone one ON WHICH Plaintiff relied or could have caused Plaintiff's purported injury.

Accordingly, each of the claims against Mr. Dattels should be dismissed with prejudice.

ME1 43256084v.1

## FACTUAL AND PROCEDURAL BACKGROUND

Recognizing the New York Supreme Court's lack of subject matter jurisdiction over her federal securities laws claims,[1] on or about April 28, 2022, Plaintiff has filed her purported securities fraud claims in the Southern District of New York (the "SDNY Action" or "this Action"). While styled as a securities fraud action, at root, each of Plaintiff's claims in this Action stems from her buyer's remorse over contracts entered into with Defendant Altum. Critically, Mr. Dattels is not alleged to have any connection with Altum, whether as a director, officer or investor in the company.

Plaintiff's complaint in this Action (the "Complaint") alleges that in March 2020, it was "reported to the Altum Board that Wuhan China was utilizing IFN a2b in an inhaler form for treatment of Covid-19" at which point the Altum "board immediately recognized the opportunity to seek FDA approval of Altum's IFN a2b as a Covid-19 treatment on an emergency use authorization basis." Dkt. 7 at ¶ 29. As such, "[t]he potential for Altum to help patients, responsibly gain approval and realize significant profits in the short-term from IFN a2b (the "Covid-19

---

[1] On or about February 17, 2022, Plaintiff filed an Amended Verified Complaint in the Supreme Court of the State of New York, County of New York (the "New York Supreme Court Action") charging Altum, BetterLife, Doroudian, and Dattels (collectively, "Defendants") with engaging in an alleged course of conduct, including making certain allegedly fraudulent misrepresentations in Canadian securities filings, that resulted in, among other things, "the loss of value of her Altum [Pharmaceuticals Inc.] shares." Thereafter, on or about March 7, 2022, Altum, BetterLife, and Doroudian moved to dismiss Plaintiff's complaint in the New York Supreme Court Action on forum non conveniens grounds pursuant to CPLR § 327(a) and/or for lack of personal jurisdiction pursuant to CPLR § 3211(a)(8). Mr. Dattels' time to respond to the complaint has been extended by agreement of the parties. That motion remains pending.

ME1 43256084v.1

Opportunity") was manifest" and "[t]he Altum shareholders stood to reap a windfall from the news and eventual sales."  Id.  The Complaint contends that Defendants thereafter "conspired, confederated and agreed to divert the Covid-19 Opportunity from Altum to themselves" such that "the Covid-19 Opportunity would be diverted from Altum's shareholders at less than fair value by whatever means possible."  Id. at ¶ 33.

With respect to Mr. Dattels, specifically, the Complaint only mentions him by name six (6) times and only two of those mentions allege a statement by Mr. Dattels. Plaintiff alleges in Paragraph 34 that:

> In furtherance of the conspiracy, defendant Dattels via email dated April 16, 2020 directed BetterLife's Chairman and fellow investor, Krisztian Toth of the Fasken law firm, to secure a license of the IFN a2b rights from Altum on below market terms.

Plaintiff alleges in Paragraph 45 that, long before the publication of the Offering Circular and Form 2A that are at the center of this action, Mr. Dattels wrote to BetterLife director Wolfgang Renz (a non-party) stating:

> [W]e have all sort of claims by [former CEO] Patrick Frankham, someone called Ali who has garnished $600k of our cash, [CEO] Russell Star's termination and others who have resigned or who may be let go.  Europe has been an unmitigated disaster.
>
> …The iamhealth business has generated <$20k in gross income and we have nothing but a big hole in Europe with legal fees mounting and an unknown own future.
>
> …

Let's batten down the hatches. Our stock is 9 cents bid. [CEO] Toni [Rinow] has resigned. We have litigation everywhere. We have former employees like Patrick trying to destroy us and now Toni is gone. We have chaos in Montreal and a huge lease obligation. We need to unwind California. We have zero revenue so to speak. We have devastated investors and if we don't turn this around fast the company will go under …

Plaintiff alleges that in July 2020, Defendants "caused Altum and BetterLife to enter into an Amalgamation Agreement (the 'Amalgamation Agreement') pursuant to which Altum would become a wholly owned subsidiary of BetterLife. In exchange for their shares, Altum shareholders would receive BetterLife shares equal to one-half of BetterLife's value." Dkt. 7 at ¶ 41. Plaintiff contends that Defendants thereafter solicited Altum's shareholders, including Plaintiff, to approve the transaction by way of an **Offering Circular** which purportedly misrepresented that "BetterLife was valued at or near $28.9 million (CND$36.1MM), that the transaction would be 'merger of equals,' and that it would provide 'better access to capital'" Id. at ¶¶ 41-42.

Plaintiff further alleges that Defendants "caused a **Form 2A Listing Statement** dated August 26, 2020 ('Form 2A') to be publicly filed with the Canadian Securities Commission . . . [which] represented, falsely and in furtherance of the conspiracy, that the valuation of Altum in connection with the transaction was determined by arm's length negotiation between BetterLife and Altum, that Altum's value at the time of the transaction was equivalent to BetterLife, that such transaction

would be a 'merger of equals,' and that the transaction was valued at $19,485,932.80 (CAN$24,357.416)." Id. at ¶ 44.

On or about November 2, 2022, Plaintiff voluntarily withdrew the Complaint's Second Claim against all Defendants for aiding and abetting securities fraud in violation of Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e). Dkt. 35. Just two claims remain against Mr. Dattels. Both are premised on the alleged misrepresentations in the Offering Circular and Form 2A, specifically, (i) securities fraud in violation of Exchange Act Section 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5 (First Claim); and (ii) fraud (Fourth Claim).

## LEGAL ARGUMENT

This Action must be dismissed against Mr. Dattels for three separate and distinct reasons: (i) there is a complete and total absence of any basis for this Court to exercise personal jurisdiction over him; (ii) this Action can and should be heard in British Columbia, not New York, in accordance with the well-recognized doctrine of *forum non conveniens*; and (iii) Plaintiff's Complaint fails to state any claim against Mr. Dattels as a matter of law[2]. Each of these bases for dismissal will be addressed in turn.

---

[2] Mr. Dattels hereby adopts and incorporates by reference all applicable arguments regarding personal jurisdiction and forum non-conveniens made in the remaining Defendants' contemporaneously-filed motions to dismiss.

## I. MR. DATTELS IS NOT SUBJECT TO PERSONAL JURISDICTION IN NEW YORK

On a Rule 12(b)(2) motion to dismiss, the plaintiff bears the burden of demonstrating that the Court has personal jurisdiction over the defendant. Beach v. Citigroup Alt. Invs. LLC, 2014 WL 904650, at *5 (S.D.N.Y. Mar. 7, 2014); DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted). To survive such a motion, the plaintiff must "make a prima facie showing through its pleadings and affidavits that jurisdiction exists." Norvel Ltd. v. Ulstein Propeller AS, 161 F. Supp. 2d 190, 199 (S.D.N.Y. 2001) (citations omitted). "A prima facie case requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." Chirag v. MTMarida Marguerite Schiffahrts, 604 F. App'x 16, 19 (2d Cir. 2015) (citing Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 185 (2d Cir. 1998)).

Plaintiff's Complaint does not (and could not) allege any facts that would support a finding that this Court has personal jurisdiction over Mr. Dattels (or any of the other Defendants).

### A. No General Jurisdiction Exists Over Mr. Dattels

General jurisdiction exists only where a defendant's contacts are so "constant and pervasive" that it is "essentially at home in the forum State." Daimler AG v. Bauman, 571 U.S. 117, 122 (2014) (citation and internal quotation marks omitted); Waldman, v. PLO, 835 F.3d 317, 331 (2d Cir. 2016) (citations omitted). "Because

-7-

general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts." SPV Osus, Ltd. v. UBS AG, 882 F.3d 333, 343 (2d Cir. 2018) (citation omitted).

Here, Plaintiff has failed to allege that Mr. Dattels has the requisite contacts with New York. Indeed, Plaintiff does not allege that Mr. Dattels personally transacted business in New York, with Plaintiff or anyone else. Moreover, Plaintiff concedes that Mr. Dattels does not reside in New York. See Dkt. 7 (Complaint) at ¶32 (noting only that Mr. Dattels has "residences in London, Palm Beach and Bermuda"). Thus, it cannot possibly said that Mr. Dattels is "at home" in New York. Daimler AG v. Bauman, supra, 571 U.S. at 122.

## B. Mr. Dattels Likewise Has No Plausible Contacts with New York that Give Rise to Specific Jurisdiction

Because Mr. Dattels is not "at home" in New York, Plaintiff can avoid dismissal only if she can establish specific jurisdiction over him pursuant to New York's long-arm statute, CPLR § 302(a). Long-arm jurisdiction over a defendant exists only where a claim "arises from" their: (1) transaction of business in New York, (2) commission of a tort in New York, (3) commission of a tort outside New York where injury is caused inside the state, or (4) ownership or use of real property in New York. See N.Y. CPLR § 302(a)(1)-(4). Plaintiff has not alleged facts

supporting any of these four possible grounds for long-arm jurisdiction over Mr. Dattels .

With respect to CPLR § 302(a)(1) and (2), as indicated, supra, Plaintiff does not allege that Mr. Dattels personally transacted business in New York, with Plaintiff or anyone else.  In fact, Plaintiff does not and cannot truthfully allege that Mr. Dattels has ever met or spoken to her.  Nor does Plaintiff allege that Mr. Dattels owns or uses real property in New York giving rise to the claims at issue in this Action so as to confer jurisdiction under CPLR § 302(a)(4).

Plaintiff's principal basis for asserting jurisdiction over Mr. Dattels appears to be that Defendants collectively committed a tort outside the State of New York (i.e. in British Columbia) that caused injury to her inside the State, thereby subjecting Mr. Dattels to the long-arm jurisdiction of this Court under CPLR § 302(a)(3).  "In determining whether an injury to person or property in New York has been alleged, courts apply a 'situs-of-injury test, which asks them to locate the original event which caused the injury.'" Gilbert v. Indeed, Inc., 513 F. Supp. 3d 374, 418 (S.D.N.Y. 2021) (quoting Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 791 (2d Cir. 1999)).  "[T]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff."  Id. (quoting Mareno v. Rowe, 910 F.2d 1043, 1046 (2d Cir. 1990)).  "In other words, the situs of injury is where the critical events

associated with the dispute occurred." Id. (quoting Int'l Telecom, Inc. v. Generadora Electricia del Oriente, S.A., 2002 WL 1072230, at *2 (S.D.N.Y. May 28, 2002)).

Here, the Complaint fails to allege where Mr. Dattels' purported wrongful activities (i.e. the two e-mail statements attributed to him in the Complaint) emanated. Plaintiff has accordingly failed to allege any viable basis for subjecting Mr. Dattels to specific jurisdiction under New York's long arm statute.[3]

## C. Requiring Mr. Dattels to Defend Against This Action Would Exceed Constitutional Limits

As already demonstrated, Plaintiff has not plead and cannot plead sufficient facts to subject Mr. Dattels to either general or specific jurisdiction under New York law. There is also an independent constitutional basis to dismiss this case as to Mr. Dattels. Before exerting any jurisdiction over Mr. Dattels, the Court must "analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir. 2010); see also Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 242 (2d Cir. 1999) (due process clause "permits a state to exercise personal jurisdiction over a non-resident defendant with whom it has certain minimum contacts," as long as the maintenance of the suit "does not offend traditional notions of fair play and

---

[3] With respect to the remaining Defendants, as previously discussed, Plaintiff has asserted claims principally against residents of Vancouver, British Columbia based on allegations that those defendants undertook wrongful activities in British Columbia. Thus, the "location of the original event which caused the [alleged] injury" is British Columbia, not New York. Gilbert, supra, 513 F. Supp. 3d at 418; Mareno, supra, 910 F.2d at 1046.

substantial justice") (citations and internal quotation marks omitted). The due process inquiry "has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." <u>Chloe</u>, <u>supra</u>, 616 F.3d at 164.

The "minimum contacts inquiry" requires analyzing "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction," by evaluating "the totality of Defendants' contacts with the forum state." <u>Id.</u> (citations omitted). "The minimum contacts requirement is also known as 'fair warning', such that the defendant's contacts with the forum should be sufficient to make it reasonable to be haled into court there." <u>In re Terrorist Attacks on Sept. 11, 2001</u>, 349 F. Supp. 2d 765, 810 (S.D.N.Y.) (citation omitted). "The 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at the residents of the forum ... and the litigation results from alleged injuries that 'arise out of or relate to' those activities." <u>Id.</u> (citations omitted).

Here, exercising personal jurisdiction over Mr. Dattels would not satisfy the "minimum contacts" requirement for the same reasons that New York's long arm statute is not met. <u>See</u>, <u>supra</u>, a Point I(B). Again, there is no allegation that Dattels has purposefully directed activities toward New York or any New York residents.[4]

---

[4] To the extent Plaintiff is attempting to assert personal jurisdiction under a conspiracy theory of jurisdiction, such attempt fails. "To establish conspiracy-based personal jurisdiction pursuant to New York's long arm statute, a plaintiff must—after making a prima facie showing of a conspiracy—plausibly allege that: '(a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted at the direction or under the control, or at the request of or on behalf of the out-of-state defendant.'" <u>Berkshire Bank v. Lloyds Banking Grp. plc</u>, 20-1987-CV, 2022 WL 569819, at *3 (2d Cir. Feb. 25, 2022) (quoting <u>Lawati v. Montague Morgan Slade Ltd.</u>, 961 N.Y.S.2d

With respect to the "reasonableness inquiry," Courts are tasked with analyzing "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice' – that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." <u>Chloe</u>, <u>supra</u>, 616 F.3d at 164 (citation omitted).  This requires weighing: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.  <u>Id.</u> at 164-165 (citations omitted).  The bar is higher when the defendants are citizens of other countries.  <u>Asahi Metal Indus., Co., Ltd. v. Superior Ct. of Cal., Solano Cnty.</u>, 480 U.S. 102, 115 (1987) ("Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field," and "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing

_____

5, 7 (1st Dep't 2013)).  To allege a conspiracy theory of jurisdiction under principles of due process, Plaintiff "must allege that (1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a [forum] to subject that co-conspirator to jurisdiction in that state." <u>Charles Schwab Corp. v. Bank of Am. Corp.</u>, 883 F.3d 68, 87 (2d Cir. 2018).  Additionally, Plaintiff must demonstrate "that a co-conspirator's minimum contacts were in furtherance of the conspiracy." <u>Id.</u> "To allow jurisdiction absent [such] a showing ... would be inconsistent with the 'purposeful availment' requirement." <u>Id.</u> Plaintiff's allegations fail to satisfy the requirements for conspiracy-based personal jurisdiction both under principles of due process and under New York's long-arm statute.  By way of example only, again, even on a most liberal reading, Plaintiff's Complaint fails to assert a single allegation that any Defendant "had an awareness of the effects in New York of its activity" or that any alleged "overt acts in furtherance of the conspiracy had sufficient contacts with [New York]" to subject Mr. Dattels to jurisdiction in this State.

the reasonableness of stretching the long arm of personal jurisdiction over national borders.").

Each and every one of the five reasonableness factors weighs against finding that an exercise of jurisdiction would comport with due process. With respect to the first factor, the burden that would be imposed on Mr. Dattels, a Bermuda resident, by litigating in New York is self-evident. Likewise, it is clear that New York's interests in having this case adjudicated here, rather than British Columbia, are negligible at best. As for the third factor, Plaintiff's interest in obtaining relief will not be impeded by litigating in British Columbia - especially given that she has already "irrevocably attorn[ed] to the jurisdiction of the Courts of Vancouver, British Columbia" for any dispute arising out of her commercial activities there and/or any claims arising out of her Employment and/or Settlement Agreements with Defendant Altum. See Dkt. 7 (Complaint) at Ex. A and Ex. B respectively. As for the two final factors, neither the interstate judicial system nor substantive social policies are conceivably implicated in this case.

For these reasons, this Court respectfully lacks specific personal jurisdiction over Mr. Dattels.

**D.  Plaintiff Cannot Assert Jurisdiction Over Mr. Dattels Under Federal Rule of Civil Procedure 4(k)(2)**

Recognizing this dispute's lack of connection to New York, Plaintiff's Complaint seeks to invoke Federal Rule of Civil Procedure 4(k)(2) in a last ditch

attempt to establish jurisdiction. Dkt. 7 (Complaint) at ¶15 ("In the event any defendant were not subject to *in personam* jurisdiction in the courts of general jurisdiction of New York State in respect of any federal claim, then exercising such jurisdiction would be proper under Fed. R. Civ. P. 4(k)(2) consistent with the United States Constitution and laws"). This, again, fails.

When determining whether Rule 4(k)(2) applies to a given dispute, Courts in this Circuit have followed the approach outlined by the First Circuit in <u>United States v. Swiss Am. Bank, Ltd.</u>, 191 F.3d 30 (1st Cir.1999):

> We hold that a plaintiff who seeks to invoke Rule 4(k)(2) must make a prima facie case for the applicability of the rule. This includes a tripartite showing (1) that the claim asserted arises under federal law, (2) that personal jurisdiction is not available under any situation-specific federal statute, and (3) that the putative defendant's contacts with the nation as a whole suffice to satisfy the applicable constitutional requirements.
>
> ***The plaintiff, moreover, must certify that, based on the information that is readily available to the plaintiff and his counsel, the defendant is not subject to suit in the courts of general jurisdiction of any state.*** If the plaintiff makes out his prima facie case, the burden shifts to the defendant to produce evidence which, if credited, would show either that one or more specific states exist in which it would be subject to suit or that its contacts with the United States are constitutionally insufficient.

<u>Porina v. Marward Shipping Co.</u>, 2006 WL 2465819, at *4 (S.D.N.Y. Aug. 24, 2006), aff'd, 521 F.3d 122 (2d Cir. 2008) (emphasis added) (quoting <u>Swiss Am. Bank</u>, <u>supra</u>, 191 F.3d at 41-42.

While Plaintiff asserts a claim against Mr. Dattels under federal securities law (First Claim), Plaintiff has not certified that he is not subject to jurisdiction in any other state, as is required to satisfy the second element of the tripartite test.  Id.; see also In re M/V MSC FLAMINIA, 107 F. Supp. 3d 313, 322 (S.D.N.Y. 2015) (rejecting plaintiff's claim of jurisdiction where "[Plaintiff] has not certified that [Defendant] is not subject to jurisdiction in any other state" and where "the facts as alleged suggest that personal jurisdiction may exist elsewhere in the United States"); Tamam v. Fransabank Sal, 677 F.Supp.2d 720, 731 (S.D.N.Y.2010) ("As to the second element, although the Court has already found that [defendant is] not subject to personal jurisdiction in New York, Plaintiffs have not certified that [defendant is] not subject to jurisdiction in any other state").

"But even if that were so—i.e., even if [Mr. Dattels] were not subject to jurisdiction in any one state—the Court would still lack jurisdiction over [Mr. Dattels] because the exercise of that jurisdiction pursuant to Rule 4(k)(2) would not comport with due process.  TAGC Mgmt., LLC v. Lehman, 2011 WL 3796350, at *6 (S.D.N.Y. Aug. 24, 2011).

As stated by the Lehman Court:

Due process for purposes of Rule 4(k)(2) requires (1) that the defendant have sufficient minimum contacts with the United States in general, rather than any particular state; and (2) that the exercise of jurisdiction is reasonable.  The first step of the analysis, minimum contacts with the United States, is a "more stringent" test than that in the more-common minimum contacts analysis for purposes of states' long-arm statutes.

The "contacts with the particular federal district in which the suit was filed, or lack thereof, may be relevant in determining, at the second stage of the analysis, whether it would be reasonable, in all the circumstances, to exercise personal jurisdiction." In ruling on reasonableness, the Court should also consider "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies."

Id. (citations omitted).

Here, Plaintiff's Complaint merely alleges that Mr. Dattels directed two communications to two of BetterLife's Canadian directors and/or board members – neither of whom are alleged to have connections to, or presence within, the United States – and that Mr. Dattels' emails had an effect in the United States because Plaintiff's losses were purportedly felt in the United States. As to the latter point, "the mere occurrence of [Plaintiff's] injury in the United States does not satisfy minimum contacts for Rule 4(k)(2)." Id. (citing Hartford Fire Ins. Co. v. M/V MSC INSA, 2003 WL 22990090, at *4 (S.D.N.Y. Dec. 18, 2003) (for effects in United States to be sufficient under Rule 4(k)(2), effects must be broadly felt throughout the country)).

Mr. Dattels' one or two communications with BetterLife's principals is likewise insufficient to confer jurisdiction under Rule 4(k)(2). Id. at *7 (citing Heinfling v. Colapinto, 946 F.Supp. 260, 264 n. 2 (S.D.N.Y.1996) (single phone call

does not satisfy minimum contacts); <u>Fox v. Boucher</u>, 794 F.2d 34, 37 (2d Cir.1986)

("It would offend 'minimum contacts' due process principles to force [an out-of-state

resident], to litigate this claim in a New York forum on the basis of one telephone

call"); and <u>Mayes v. Leipziger</u>, 674 F.2d 178, 184–85 (2d Cir.1982) (out-of-state

letters and phone calls insufficient). "Indeed, courts in this district have found

minimum contacts lacking in Rule 4(k) (2) analysis when the defendant in question

had far more connection with the United States than [one or two communications

with United States citizens]." <u>Id.</u> (citing <u>Nursan Metalurji Endustrisi A.S. v. M/V</u>

<u>TORM GERTRUD</u>, 2009 WL 536059, at *3–4 (S.D.N.Y. Feb. 27, 2009) (no

minimum contacts with United States sufficient for 4(k)(2) when defendant had an

office in Connecticut and owned several ships that conducted trade in American

ports)).

For these reasons, this Court does not have personal jurisdiction over Mr.

Dattels under Rule 4(k)(2).

ME1 43256084v.1

## II. THIS ACTION SHOULD BE DISMISSED UNDER THE DOCTRINE OF *FORUM NON CONVENIENS* INSOFAR AS BRITISH COLUMBIA, NOT NEW YORK, IS AT THE HEART OF THE DISPUTE

"A district court ... may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 432 (2007); Gross v. British Broadcasting Corp., 386 F.3d 224, 229 (2d Cir. 2004) (district courts may "refuse to entertain jurisdiction of a case … when doing so would best serve the convenience of the parties and the ends of justice."). The decision to dismiss a matter on *forum non conveniens* grounds "lies wholly within the broad discretion of the district court." Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 46 (2d Cir. 1996) (citation omitted). The Second Circuit has set out "a three-step process to guide the exercise of [courts'] discretion." Wamai v. Indus. Bank of Korea, 2021 WL 3038402, at *3 (S.D.N.Y. July 14, 2021). First, the court "determines the degree of deference properly accorded the plaintiff's choice of forum." Id. Second, the court "considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute." Id. Finally, the court "balances the private and public interests implicated in the choice of forum." Id. All of these factors weigh in favor of dismissal.

ME1 43256084v.1

**A. Plaintiffs' Choice of Forum Is Not Entitled to Substantial Deference Because the Lawsuit Lacks Any Legitimate Connection to New York**

The Court should not afford undue deference to Plaintiff's decision to file this action in New York. "[T]here is no rigid rule of decision protecting U.S. citizen or resident plaintiffs from dismissal for *forum non conveniens*." RIGroup LLC v. Trefonisco Mgmt. Ltd., 949 F. Supp. 2d 546, 551-52 (S.D.N.Y. 2013), aff'd, 559 F. App'x 58 (2d Cir. 2014); see also Sussman v. Bank of Isr., 801 F. Supp. 1068, 1073 (S.D.N.Y. 1992), aff'd, 990 F.2d 71 (2d Cir. 1993) ("Where an American plaintiff chooses to invest in a foreign country and then complains of fraudulent acts occurring primarily in that country, the plaintiff's ability to rely upon citizenship as a talisman against *forum non conveniens* dismissal is diminished"). The "degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale depending on several relevant considerations." Iragorri v. United Tech. Corp., 274 F.3d 65, 71 (2d Cir. 2001). Those considerations vary depending on the circumstances of the case, but largely center around the "plaintiff's or the lawsuit's bona fide connection to the United States and to the [plaintiff's] forum of choice." Id. at 72. As previously discussed, such a connection is lacking here inasmuch as the operative facts of this litigation unquestionably took place in British Columbia. Thus, as a threshold matter, any deference due to Plaintiffs' choice to sue here "does

not operate at full strength." <u>LaSala v. TSB Bank, PLC</u>, 514 F. Supp. 2d 447, 457 (S.D.N.Y. 2007).

In any event, <u>Iragorri</u> also instructs courts to look to the availability of witnesses and evidence when determining the proper degree of deference. <u>Id.</u> at 72. The key witnesses and evidence in this Action are located in British Columbia. Indeed, as the Defendants Doroudian, Altum, and BetterLife have previously indicated to the New York Supreme Court, "any business records – or other documents that might in any way relate to Plaintiff's claims – that might be in Altum's or BetterLife's possession, custody, or control are located in British Columbia" and "[n]either Defendants Doroudian, Altum, nor BetterLife maintains any business records, or any other documents, in New York." NYSCEF Doc. No. 16 at 18-19. Nor is there any allegation in Plaintiff's Complaint that Defendant Dattels maintains business records, or any other documents, in New York.

Where, as here, "[m]uch of the relevant documentary evidence" is abroad and "potentially relevant witnesses are … outside the subpoena power of this Court," the "difficulty of conducting discovery" in New York "weighs against deference to the plaintiffs' choice [of forum]." <u>Owens v. Turkiye Halk Bankasi A.S.</u>, 2021 WL 638975, at *4 (S.D.N.Y. Feb. 16, 2021).

## B. Canadian Courts Provide an Adequate Alternative Forum[5]

An alternative forum is adequate "if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." LaSala, supra 514 F. Supp. 2d at 455. "The test does not mean that the same degree of relief must be available in the alternative forum." Id. Thus, unless litigating in the alternative forum presents a "fundamental obstacle" to recovery, "American courts are not prone to characterizing a sovereign nation's courts as 'clearly unsatisfactory.'" Id.

Here, through their respective motions, the other Defendants appear to have consented to jurisdiction in the Canadian courts in the event that this Action is dismissed. See BFI Grp. Divino Corp. v. JSC Russian Aluminum, 298 F. App'x 87, 91 (2d Cir. 2008) ("An agreement by the defendant to submit to the jurisdiction of the foreign forum can generally satisfy this requirement."). Mr. Dattels is not opposed to the other parties litigating their claims in Canada.

Moreover, "the Second Circuit has concluded that Canada is an adequate forum to try actions based on violations of federal securities laws." In re Royal Grp. Techs. Sec. Litig., 2005 WL 3105341, at *2 (S.D.N.Y. Nov. 21, 2005) (citing DiRienzo v. Philip Servs. Corp., 232 F.3d 49, 57-60 (2d Cir.2000), vacated on other grounds by DiRienzo v. Philip Servs. Corp., 294 F.3d 21 (2d Cir.2002)); In re

---

[5] For the reasons set forth in Section III, infra, Plaintiff's Complaint fails to state any cognizable claim against Defendant Dattels, and thus he does not concede that this Action should continue against him in any forum.

iAnthus Capital Holdings, Inc. Sec. Litig., 2022 WL 4539119, at *12 (S.D.N.Y. Sept. 28, 2022) (same).

As such, this dispute is entirely capable of being fully and fairly adjudicated in Canada.

### C.     Public and Private Interests Weigh in Favor of Dismissal

The final prong of the *forum non conveniens* analysis requires balancing private and public interest factors.

"Private interest factors are those that involve the 'convenience of the litigants,'" Wamai, 2021 WL 3038402, at *7, and include: "(1) the ease of access to evidence; (2) the availability of compulsory process; (3) the cost for cooperative witnesses to attend trial; (4) the enforceability of a judgment; and (5) all other practical matters that might shorten any trial or make it less expensive." Holzman v. Guoqiang Xin, 2015 WL 5544357, at *8 (S.D.N.Y. Sept. 18, 2015). Public interest factors include: "1) court congestion; 2) the relation of the litigation to the chosen forum as opposed to its relation to the proposed alternative forum, i.e., the 'local interest in having localized controversies decided at home', including a reluctance to impose jury duty on residents of a forum with little or no connection to the dispute; and 3) the interest in having the dispute adjudicated in a forum that is 'at home with the ... law that must govern the case....'"

Gilstrap v. Radianz Ltd., 443 F. Supp. 2d 474, 482 (S.D.N.Y. 2006) (citations omitted), aff'd, 233 F. App'x 83 (2d Cir. 2007).

The private and public interests both weigh in favor of dismissal. Again, this case bears no relation to New York law; rather, it concerns Plaintiff's involvement with, and shares in, Canadian entities. Moreover, all of the Defendants, save for Defendant Dattels, reside in British Columbia, and any corporate records pertaining to this dispute are located there. See BFI Grp. Divino Corp. v. JSC Russian Aluminum, 481 F. Supp. 2d 274, 288 (S.D.N.Y. 2007) (forum non conveniens dismissal warranted where numerous key witnesses were located in Nigeria and those who effectuated the alleged torts were located within the Russian Federation); Varnelo v. Eastwind Transp., Ltd., 2003 WL 230741, at *19 (S.D.N.Y. Feb. 3, 2003) ("[t]he location and availability of witnesses ... strongly favors trial in Russia" when "most of the key witnesses in this case are Russian nationals").

\*      \*      \*

For all of these reasons, this Action should be dismissed under the doctrine of *forum non conveniens*.

ME1 43256084v.1

### III. PLAINTIFF'S CLAIMS AGAINST DEFENDANT DATTELS SHOULD LIKEWISE BE DISMISSED PURSUANT TO RULE 12(B)(6) AND RULE 9(B)

In addition to the ample grounds for dismissal based on lack of personal jurisdiction and forum *non-conveniens*, this action must be dismissed because Plaintiff also fails to state a claim against Mr. Dattels as a matter of law.

"To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Libertarian Party of Erie Cty. v. Cuomo, 970 F.3d 106, 120 (2d Cir. 2020) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A complaint must "plead[] factual content" - more than "[t]hreadbare recitals of the elements" or "conclusory statements" – so as to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). Although the Court must accept all well-pleaded facts as true, it need not accept as true legal conclusions, and "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation omitted).

Plaintiff's Complaint asserts two claims against Defendant Dattels: (i) securities fraud in violation of Exchange Act Section 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5 (First Claim); and (ii) fraud (Fourth Claim). Neither of these claims satisfies the requisite pleading standards.

-24-

## A. Securities Fraud (First Claim)

Plaintiff's first claim for securities fraud seeks to hold Mr. Dattels and the other Defendants liable for "disseminating the Offering [Circular] and Form 2A [] containing materially false and misleading statements and omissions" in violation of SEC Rule 10b-5(b). Dkt. 7 at ¶¶ 52, 54. Rule 10b-5 provides, in full:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) ***To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading,*** or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5 (emphasis added).

Typically, "only the 'maker' of a misstatement, i.e., the person with ultimate authority over the statement [including its content and whether and how to communicate it], can have primary liability under Rule 10b-5(b)." Sec. & Exch. Comm'n v. Rio Tinto plc, 41 F.4th 47, 49 (2d Cir. 2022) (citing Janus Cap. Grp., Inc. v. First Derivative Traders, 564 U.S. 135, 142 (2011)).[6] "That is, 'only those

---

[6] Notably, "misstatements and omissions claims brought by private plaintiffs under Rule 10b-5(b) are subject to the heightened pleading standard of the Private Securities Litigation Reform Act [PSLRA]." Rio Tinto, supra, 41 F.4th at 49 (citing 15 U.S.C. § 78u-4(b)(1)). The PSLRA mandates that "the complaint shall specify each statement alleged

officers whose signatures appear on misleading statements may be liable as the 'makers' of those statements.'" <u>Livingston v. Cablevision Sys. Corp.</u>, 966 F. Supp. 2d 208, 221 (E.D.N.Y. 2013) (quoting <u>In re Smith Barney Transfer Agent Litig.</u>, 884 F.Supp.2d 152, 165 (S.D.N.Y.2012)).  Individual officers, nonofficer directors, and shareholders generally do not fall under the "ultimate authority" umbrella unless they have signed onto the purportedly misleading statements.  <u>See, e.g.</u>, <u>Hefler v. Wells Fargo & Co.</u>, 2018 WL 1070116, at *2 (N.D. Cal. Feb. 27, 2018) (individual officers not liable under 10b-5 for statements made in company press releases and SEC filings where individuals did not sign SEC filings and absent specific facts showing individuals had ultimate authority over alleged misstatements); <u>Lanza v. Drexel & Co.</u>, 479 F.2d 1277, 1308 (2d Cir. 1973) ("To hold individual, nonofficer directors personally liable for fraud by officers in their corporate negotiations was never the intent, Congressional or otherwise, of Section 10(b) of the 1934 Act nor of Rule 10b-5."); <u>In re Optimal U.S. Litig.</u>, 2011 WL 4908745, at *5 (S.D.N.Y. Oct. 14, 2011) (holding that a fund's investment manager and sole voting shareholder lacked "ultimate authority" over the fund's disclosures because "it was

---

to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C.§ 78u-4(b)(1). The complaint also "shall, with respect to each act or omission ... state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. 15 U.S.C. § 78u-4(b)(2).  Plaintiff comes nowhere close to meeting this burden with respect to her claims against Mr. Dattels, or any other Defendant.

the board of directors of [the fund], not the shareholders, which had 'ultimate authority' to issue the [disclosures]."").

Under this legal backdrop, Mr. Dattels – having no interest in Altum whatsoever and being a mere shareholder in BetterLife with no position, duties or responsibilities with the corporation  - it is a matter of public record that Mr. Dattels was not a board member, officer, executive director, director or employee– had no authority to affect the company's public reporting (including the Offering Circular and Form 2A.  Therefore he  cannot possibly be deemed to be the "maker" of any of the purported "false and misleading statements and omissions" contained in either the Offering Circular or the Form 2A.  <u>Optimal</u>, <u>supra</u>, 2011 WL 4908745, at *5.  As such, Plaintiff is unable to state a viable claim against Mr. Dattels for violation of SEC Rule 10b-5(b) as a matter of law.

## B.    Fraud (Fourth Claim)

Plaintiff's common law fraud claim is equally unsustainable against Mr. Dattels insofar as the Complaint offers no more than conclusory allegations of fraud.

Under New York law, to assert  common law fraud a plaintiff must plead: (1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages, <u>and</u> satisfy Rule 9(b)'s heightened pleading standard.  <u>See</u> <u>Matana v.</u>

Merkin, 957 F. Supp. 2d 473, 484 (S.D.N.Y. 2013); Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC, 797 F.3d 160, 170 (2d Cir. 2015).

The heightened pleading requirements of Federal Rule of Civil Procedure 9(b) mandates that a party alleging fraud state with particularity the circumstances constituting fraud. "'[T]he complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" Berdeaux v. OneCoin Ltd., 561 F. Supp. 3d 379, 411 (S.D.N.Y. 2021) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)). Although Rule 9(b) allows malice, intent, knowledge, and other conditions of a person's mind to be alleged generally, a court "must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations, ... plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." Id. (citations omitted). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Id. (citing Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).

Here, among other deficiencies, Plaintiff's Complaint fails to explain how either of the two e-mail statements attributed to Mr. Dattels in the Complaint (Dkt. 7 at ¶¶ 34, 45) were fraudulent or resulted in harm to Plaintiff. To the contrary, the statement attributed to Mr. Dattels about securing a license from Altum, Dkt. 7 at ¶ 34, is not actually alleged to have resulted in BetterLife securing such a license (and, in fact, it did not). Moreover, the quoted fragments of an email purportedly sent by Mr. Dattels concerning the financial condition of BetterLife, see Dkt. 7 at ¶ 45, are alleged by the Plaintiff to be truthful. Thus, the Complaint does not allege that Defendant Dattels knowingly made any material misrepresentation of fact (Loreley, 797 F.3d at 170), much less in a manner giving rise to a strong inference of fraudulent intent. Berdeaux, 561 F. Supp. 3d at 411.

Nor does the Complaint allege (or, frankly, explain how) Mr. Dattels' aforementioned e-mail statements **to BetterLife's principals** were intended to defraud Plaintiff. Further still, the Complaint does not allege, nor could it, that Plaintiff justifiably relied on the statements of a mere shareholder to her detriment. That is, Plaintiff has failed to allege any causal connection between Mr. Dattels' informal statements in e-mails to BetterLife principals and the damages she now claims.

Because Plaintiff has failed plead the elements of fraud, much less satisfy Rule 9(b)'s heightened pleading standard, the Complaint's fraud claim against Mr. Dattels

is patently unsustainable as a matter of law and cannot proceed.

## CONCLUSION

For all of the foregoing reasons, this Court should dismiss Plaintiff's claims

against Mr. Dattels with prejudice.

Dated: New York, New York
      November 15, 2022                         Respectfully Submitted,

                                         */s/ John C. Kelly*
                                         John C. Kelly, Esq. (PHV Forthcoming)
                                         Brian W. Carroll, Esq.
                                         **McCARTER & ENGLISH, LLP**
                                         Worldwide Plaza
                                         825 Eighth Avenue, 31st Floor
                                         New York, New York 10019
                                         Telephone: (212) 609-6800
                                         Facsimile: (212) 609-6921
                                         jkelly@mccarter.com
                                         bcarroll@mccarter.com
                                         *Attorneys for Defendant Stephen Dattels*

ME1 43256084v.1