# ALTUM PHARMACEUTICALS INC.

## CONSULTANT AGREEMENT

This Consultant Agreement (this "Agreement") is entered into effective as of June 11, 2018 (the "Effective Date") by and between Altum Pharmaceuticals Inc. a Canadian corporation (the "Company"), and Nancy Miller-Rich ("Consultant").

The parties agree as follows:

1. **Services**. Consultant shall provide consultancy services to the Company as requested by the Company, collaborating and providing such other advice and assistance to the Company as mutually agreed from time to time but no more than 80 hours during the 3 month period (collectively, the "Services").

2. **Consideration**. Consultant shall have no right to any compensation except as set forth in this Section 2.

    (a) **Upfront Fee**. The Company shall pay Consultant a one-time upfront Consultant fee of $37,500 within 45 days following the Effective Date.

    (b) **Stock Options**. Company will grant Consultant 37,500 options to purchase the Company's common stock at an exercise price of US$0.01 per common stock and expiring on June 30, 2020 (the "Stock Option"). The Stock Option will be issued for your services rendered and will vest immediately.

3. **Expenses**. Consultant shall be required to submit to the Company reasonable evidence that the amount involved was both reasonable and necessary to the Services provided under this Agreement.

4. **Term and Termination**. The term of this Agreement shall commence on the date of this Agreement and shall continue until three (3) months from the Effective Date. This Agreement may be extended by mutually written agreement between Consultant and the Company. Sections 5-12 of this Agreement shall survive any termination or expiration.

5. **Independent Contractor**. Consultant's relationship with the Company will be that of an independent contractor and not that of an employee. Consultant will not be eligible for any employee benefits, nor will the Company make deductions from payments made to Consultant for employment or income taxes, all of which will be Consultant's responsibility. Consultant agrees to indemnify and hold the Company harmless from any liability for, or assessment of, any such taxes imposed on the Company by relevant taxing authorities. Consultant will have no authority to enter into contracts that bind the Company or create obligations on the part of the Company without the prior written authorization of the Company.

6. **Nondisclosure of Confidential Information**.

    (a) **Agreement Not to Disclose**. Consultant agrees to hold in confidence and not disclose or use any Confidential Information (as defined below) disclosed to Consultant by the Company (or otherwise obtained or learned in connection with the Services) for Consultant's own use or for any

purpose other than in performing the Services. Consultant shall not disclose or permit disclosure of any Confidential Information of the Company to third parties, without the prior written consent of the Company. Consultant agrees to take all reasonable measures to protect the secrecy of and avoid disclosure or use of Confidential Information of the Company in order to prevent it from falling into the public domain or the possession of persons other than those persons authorized under this Agreement to have any such information. Consultant further agrees to notify the Company in writing of any actual or suspected misuse, misappropriation or unauthorized disclosure of the Company's Confidential Information which may come to Consultant's attention.

(b) **Definition of Confidential Information**. "Confidential Information" means any information, technical data or know-how (whether disclosed before or after the date of this Agreement), including, but not limited to, all Inventions, information relating to business and product or service plans, financial projections, customer lists, business forecasts, sales and merchandising, human resources, patents, patent applications, computer object or source code, research, inventions, processes, designs, drawings, engineering, marketing or finance to be confidential or proprietary or which information would, under the circumstances, appear to a reasonable person to be confidential or proprietary. Confidential Information does not include information, technical data or know-how which: (i) is in the possession of Consultant at the time of disclosure, as shown by Consultant's files and records immediately prior to the time of disclosure; or (ii) becomes part of the public knowledge or literature, not as a direct or indirect result of any improper inaction or action of Consultant.

(c) **Exceptions**. Notwithstanding the above, Consultant shall not have liability to the Company or any of its subsidiaries with regard to any Confidential Information of the Company which Consultant can prove: (i) is disclosed with the prior written approval of the Company; or (ii) is disclosed pursuant to the order or requirement of a court, administrative agency, or other governmental body; provided, however, that Consultant shall provide prompt notice of such court order or requirement to the Company to enable the Company or its appropriate subsidiary to seek a protective order or otherwise prevent or restrict such disclosure.

7. **No Duplication; Return of Materials**. Consultant agrees, except as otherwise expressly authorized by the Company, not to make any copies or duplicates of any of the Company's Confidential Information. Any materials or documents that have been furnished by the Company to Consultant in connection with the Services shall be promptly returned by Consultant to the Company, accompanied by all copies of such documentation, within ten (10) days after the earlier of (a) the date on which the Services have been concluded (or Consultant's service-provider relationship with the Company has been terminated) or (b) the date of written request of the Company.

8. **No Rights Granted**. Nothing in this Agreement shall be construed as granting any rights under any patent, copyright or other intellectual property right of the Company, nor shall this Agreement grant Consultant any rights in or to the Company's Confidential Information, except the limited right to use the Confidential Information in connection with the Services.

9. **Assignment of Inventions**. To the extent that, in the course of performing the Services, Consultant jointly or solely conceives, develops, or reduces to practice any inventions, original works of authorship, developments, concepts, know-how, improvements or trade secrets, whether or not patentable or registrable under copyright or similar laws ("Inventions"), Consultant hereby assigns all rights, titles and interest to such Inventions to the Company, and Consultant agrees that the Company owns all such

Inventions. As requested by the Company, Consultant shall take all steps reasonably necessary to assist the Company in obtaining and enforcing in its own name any patent, copyright or other protection which the Company elects to obtain or enforce for the Inventions. Consultant's obligation to assist the Company in obtaining and enforcing patents, copyrights and other protections shall continue beyond the termination of Consultant's relationship with the Company.

10. **Solicitation**. Consultant agrees that during the term of this Agreement and for one year thereafter, Consultant will not encourage or solicit any employee, Consultant or customer of Company to leave Company for any reason.

11. **No Conflicts**. Consultant represents that Consultant's compliance with the terms of this Agreement and provision of Services hereunder will not violate any duty which Consultant may have to any other person or entity (such as a present or former employer) or any right of any third party, including obligations concerning providing services to others, confidentiality of proprietary information and assignment of inventions, ideas, patents or copyrights, and Consultant agrees that Consultant will not do anything in the performance of Services hereunder that would violate any such duty or right. Consultant agrees that, during the term of this Agreement, Consultant will not perform any services for any entity or person or otherwise participate in any activities that are competitive with the Company.

12. **Miscellaneous**. The Company agrees that use of Consultant's name and bio shall be subject to Consultant's prior approval. This Agreement and the Services performed hereunder are personal to Consultant and Consultant shall not have the right or ability to assign, transfer or subcontract any obligations under this Agreement without the written consent of the Company. Any attempt to do so shall be void. The Company shall be free to transfer any of its rights under this Agreement to a third party. *[Signature Page Follows]*

The parties have executed this Consultant Agreement as of the date first written above.

**THE COMPANY:**

**ALTUM PHARMACEUTICALS INC.**

By: _____
(Signature)

Name: Ahmad Doroudian
Title: CEO
Address: 1275 West 6th Avenue, #300, Vancouver, BC V6H 1A6

**CONSULTANT:**

**NANCY MILLER-RICH**

_____
(Signature)

Address: 55 Mt Pleasant Rd
Morristown, NJ 07960

Email: nancymillerrich@gmail.com