UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NANCY MILLER-RICH,

                            Plaintiff,

            -against-

ALTUM PHARMACEUTICALS INC.,
BETTERLIFE PHARMA INC., AHMAD
DOROUDIAN, STEPHEN DATTELS, KRISZTIAN
TOTH, JOSEPH MIMRAN, JOHN AND JANE
DOES 1-50, and ABC CORPORATIONS 1-20,

                            Defendants.

Case No. 1:22-cv-03473 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

        Plaintiff Nancy Miller-Rich ("Plaintiff") brings this action against Defendants Altum

Pharmaceuticals Inc. ("Altum"), BetterLife Pharma Inc. ("BetterLife"), Ahmad Doroudian

("Doroudian"), Stephen Dattels ("Dattels"), Krisztian Toth ("Toth"), Joseph Mimran

("Mimran"), John and Jane Does 1-50 (the "Does"), and ABC Corporations 1-20 (the

"Corporations") (collectively, "Defendants").  ECF No. 50 (the "Amended Complaint" or

"Am. Compl.").  Plaintiff asserts a securities-fraud claim against Altum and Doroudian under

Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.

§ 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.  *See* Am. Compl.

¶¶ 78-81 ("Claim I").  Plaintiff also raises a common-law-fraud claim against Altum,

BetterLife, Doroudian, Dattels, Toth, Mimran, the Does, and the Corporations, *see id.*

¶¶ 82-88 ("Claim II"); a common-law-fraud claim against only Altum and Doroudian, *see id.*

¶¶ 89-95 ("Claim III"); and two breach-of-contract claims against Altum, *see id.* ¶¶ 96-102

("Claim IV"); *id.* ¶¶ 103-110 ("Claim V").  All of the claims relate to Plaintiff's former

employment at Altum and/or to Altum shares that she received while consulting for or
employed by Altum.

On March 3, 2023, Altum, BetterLife, and Doroudian (collectively, the "Altum
Defendants") moved to dismiss the Amended Complaint.  ECF No. 63 ("Altum Br."); *see also*
ECF No. 77 ("Altum Reply").  That same day, Dattels also moved to dismiss the Amended
Complaint.  ECF No. 67-1 ("Dattels Br."); *see also* ECF No. 78 ("Dattels Reply").  Plaintiff
opposes both motions.  ECF No. 74 ("Opp.").  Plaintiff "also conditionally cross-moves for
limited jurisdictional discovery in the event the Court determines that the evidence available
at this preliminary stage is insufficient to make out a *prima facie* showing of personal
jurisdiction."  *Id.* at 1.  The Altum Defendants and Dattels oppose Plaintiff's conditional
cross-motion.  *See* Altum Reply at 9-10; Dattels Reply at 10-11.  Toth and Mimran have not
appeared in this case (nor, unsurprisingly, have the unnamed Does or Corporations).

For the reasons set forth below, the Court GRANTS the motions to dismiss and
DENIES Plaintiff's conditional cross-motion for jurisdictional discovery.

## BACKGROUND

### I.    Factual Allegations[1]

Plaintiff is a New York resident with decades of experience holding upper-level-
management positions in the pharmaceutical, biotechnological, and healthcare industries.

---

[1] In evaluating the motions to dismiss filed by the Altum Defendants and Dattels, the Court
accepts the Amended Complaint's factual allegations as true and draws all reasonable
inferences in favor of Plaintiff.  *See Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113
(2d Cir. 2023).  The Court considers documents attached to the Amended Complaint or
incorporated in the Amended Complaint by reference, as well as matters subject to judicial
notice.  *See N.Y. Pet Welfare Ass'n v. City of New York*, 850 F.3d 79, 86 (2d Cir. 2017).
Where appropriate, the Court considers affidavits and attached exhibits submitted by the
parties.  *See Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988) (district court's inquiry
into *forum non conveniens* "may be resolved on affidavits presented by the parties"); *Aguas
Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 697 n.1 (2d Cir. 2009) (relying on

Am. Compl. ¶¶ 2, 19.  On June 7, 2018, Plaintiff met Doroudian (a resident of Vancouver, British Columbia) at a healthcare conference held at a hotel in New York.  *Id.* ¶¶ 5, 20.  At the time, Doroudian was the chairperson and chief executive officer of Altum, a Canadian biopharmaceutical start-up company focused on developing products to treat human papillomavirus ("HPV") and cancer.  *Id.* ¶¶ 3, 20.  One of Doroudian's goals was for Altum to obtain approval from the United States Food and Drug Administration (the "FDA") to use interferon alpha-2b ("interferon") to treat HPV.  *Id.* ¶ 20.[2]

"Doroudian proposed that [Plaintiff] join Altum as a part-time consultant in the New York Metropolitan area to assist with fundraising, product development and sourcing [interferon] material from [Plaintiff's] former employer."  *Id.* ¶ 23.  Over the next two days, Plaintiff and Doroudian "exchanged emails and a form of agreement setting forth the material terms of the consulting arrangement, including a three-month term for $75,000 in compensation payable half in cash and half in Altum shares."  *Id.*  On June 13, 2018, Doroudian emailed Plaintiff a copy of the consulting agreement for her to sign and return, which she did.  *Id.* ¶ 24; *see* ECF No. 50-1 (the "Consulting Agreement").  Plaintiff "fully performed her obligations under the Consulting Agreement."  Am. Compl. ¶ 27.  She was unaware, however, that Doroudian was diluting the value of Altum's stock; as a result, the stock payments to Plaintiff were worth far less than the $37,500 owed under the Consulting Agreement.  *Id.* ¶ 26.

---

affidavits to resolve a *forum non conveniens* motion is "a practice long recognized as acceptable and followed from time immemorial in the busy Southern District of New York" (citation omitted)).

[2] Interferon alpha-2b (also spelled interferon alfa-2b) is a "synthetic protein" that may help a person's "immune system fight viral infections and certain cancer growths."  *Interferon Alfa-2b Injection*, Cleveland Clinic, https://my.clevelandclinic.org/health/drugs/19584-interferon-alfa-2b-injection [https://perma.cc/5LDR-AF2L].

During the summer of 2018, Doroudian recruited Plaintiff to join Altum on a full-time basis, including as executive chairperson of its board of directors. *Id.* ¶¶ 28-29. Doroudian ultimately persuaded Plaintiff to join Altum, resulting in Plaintiff signing a written employment agreement in the fall of 2018. *Id.* ¶¶ 29, 31; *see* ECF No. 50-2 (the "Employment Agreement"). Under the Employment Agreement, Plaintiff's "initial compensation was set at $410,000, including a $50,000 signing bonus payable in immediately exercisable stock options, as well as $180,000 in salary, $80,000 in stock and $100,000 in options, each payable in equal quarterly installments." Am. Compl. ¶ 33. Article 12 of the Employment Agreement, titled "GOVERNING LAW," stated:

> This Agreement will be governed by and construed in accordance with the laws of the Province of British Columbia. Each of the parties hereby irrevocably attorns to the jurisdiction of the Courts of Vancouver, British Columbia, with respect to any disputes arising out of this Agreement.

Employment Agreement § 12.1.[3] Plaintiff "fully performed her obligations under the Employment Agreement." Am. Compl. ¶ 34. Altum paid Plaintiff "for the last quarter of 2018 and all four quarters of 2019 as required, but thereafter failed and refused to make further salary payments without justification or explanation." *Id.* ¶ 40.

Altum was not Doroudian's only company. He also co-founded BetterLife, a Canadian penny-stock cannabis company that shared a Vancouver address with Altum. *Id.* ¶¶ 3-4, 45. In May 2019, an investment partnership led by Dattels (a resident of Palm Beach, Florida and Toronto, Ontario), Toth (a partner at a law firm in Toronto, Ontario), and Mirman (a resident of New York, Palm Beach, and Toronto) assumed control of BetterLife. *Id.* ¶¶ 6-8,

---

[3] To "attorn" is "[t]o consent or submit to the jurisdiction of a particular court, government, territory, etc." *Attorn*, Oxford English Dictionary, https://doi.org/10.1093/OED/4399891867 (last visited Nov. 20, 2023). Its usage is "chiefly Canadian." *Id.* (emphasis omitted).

47; ECF No. 75 ¶ 20.  "Doroudian was relegated to a non-voting observer position on the BetterLife board," while Dattels "exercised *de facto* control of the company" with Toth and Mirman's assistance.  Am. Compl. ¶ 48.  Still, Doroudian remained "a major shareholder" of BetterLife.  *Id.* ¶ 45.

On March 25, 2020, Altum's chief medical officer informed the company's board of directors that people in Wuhan, China were using an inhaler form of interferon to treat COVID-19.  *Id.* ¶ 44.  "The board immediately recognized the opportunity to seek FDA approval" of Altum's interferon product to treat COVID-19 on an emergency-use-authorization basis.  *Id.*  After the board meeting, Doroudian alerted Dattels about the new opportunity.  *Id.* ¶ 49.  On April 6, 2020, Dattels sent an email to Doroudian, Toth, and Mimran stating that BetterLife was "on the road to being broke" and had "zero revenue," and suggesting that they steer the COVID-related interferon opportunity to BetterLife.  *Id.*  Doroudian, Dattels, Toth, and Mimran thereafter conspired to do so.  *Id.* ¶¶ 50-57.

After Plaintiff learned about the scheme to divert the COVID-related interferon opportunity, she "decided to part ways with Altum and Doroudian."  *Id.* ¶ 63; *see id.* ¶ 58.  As part of her departure, Plaintiff (and another dissenting director) entered into a settlement agreement with Altum on June 9, 2020.  *Id.* ¶ 63; *see* ECF No. 50-3 (the "Settlement Agreement").  The Settlement Agreement "constitute[d] the entire agreement between the parties" and "supersede[d] and replace[d] any and all other agreements, arrangements or understandings between or among the parties."  Settlement Agreement at 2.  It further provided that:

> This agreement shall be governed by and construed in accordance with the laws of the Province of British Columbia and the laws of Canada applicable therein, and the parties hereto hereby irrevocably attorn to the jurisdiction of the Courts thereof.

*Id.* As part of the Settlement Agreement, Plaintiff agreed to receive "a substantial discount from what was due and owing under the Employment Agreement." Am. Compl. ¶ 63.

The Settlement Agreement appended a schedule with mutual releases executed by Plaintiff, Doroudian on his own behalf, and Doroudian on behalf of Altum. *See* Settlement Agreement at 8-13. In the schedule, Plaintiff "declare[d] that [she] ha[d] been provided with adequate opportunity to obtain independent legal advice with regard to" the schedule, that she "execute[d] it voluntarily with full knowledge of its terms and conditions," that she "fully underst[ood]" the schedule, and that she "ha[d] not been influenced by any representations or statements made by or on behalf of Altum." *Id.* at 10. Section 10 of the schedule, under the heading "Governing Law and Language," stated:

> This Resignation and Mutual Release shall, in all respects, be subject to, interpreted, construed and enforced in accordance with and under the laws of the Province of British Columbia and the laws of Canada applicable therein. The parties hereby irrevocably submit to the exclusive jurisdiction of the courts of British Columbia with respect to any matter arising hereunder or related hereto.

*Id.* at 11.

"Altum subsequently refused to make any payments" to Plaintiff due under the terms of the Settlement Agreement. Am. Compl. ¶ 63. Meanwhile, with Plaintiff and the other dissenting director no longer standing in their way, Defendants "were free to proceed with their scheme to divert" the COVID-related interferon opportunity to BetterLife. *Id.* ¶ 64. In furtherance of this scheme, BetterLife and Altum ultimately merged, with Altum becoming a wholly owned subsidiary of BetterLife. *Id.* ¶ 73.

## II.    Procedural History

On August 25, 2021, Plaintiff filed a lawsuit in the Supreme Court of the State of New York, New York County (the "State Court") against Altum, BetterLife, and Doroudian. ECF

No. 64-1.  Plaintiff filed a verified complaint in State Court (adding Dattels, the Does, and the Corporations as defendants) on January 20, 2022.  ECF No. 64-2.  Her claims included federal securities fraud (against Altum and Doroudian), aiding and abetting federal securities fraud (against Altum and Doroudian), common-law fraud (against all Defendants), and breach of contract (against Altum).  *See generally id.*  Plaintiff filed a nearly identical amended version of the complaint on February 17, 2022.  ECF No. 64-3 (the "State Court complaint"); *see* Opp. at 32 (explaining that this amendment merely "cure[d] a technical defect").

On March 4, 2022, Altum filed suit against Plaintiff and the other dissenting director in the Supreme Court of British Columbia (the "British Columbia Court"), alleging breaches of common-law fiduciary duties, statutory fiduciary duties, and contract.  ECF No. 64-4. Three days later, the Altum Defendants moved to dismiss the State Court complaint on *forum non conveniens* and personal-jurisdiction grounds.  Memorandum of Law in Support of the Motion to Dismiss, *Miller-Rich v. Altum Pharms. Inc.*, No. 655172/2021 (N.Y. Sup. Ct. Dec. 1, 2022), https://iapps.courts.state.ny.us/nyscef/ViewDocument?docIndex=AiLUzJLpz/ H9RLhnqwWopw== [https://perma.cc/9SNE-SQ2M].

Plaintiff filed the present action in federal court on April 28, 2022.  ECF No. 1.  The next day, Plaintiff filed an affirmation in State Court: (1) opposing the Altum Defendants' motion to dismiss; (2) "appris[ing]" the State Court "of its lack of subject matter jurisdiction over the federal claims asserted in this action and of the refiling of plaintiff's claims in federal court where all of her claims may be heard"; and (3) requesting that – if it did not "*sua sponte* dismiss this action in deference to a parallel federal case" – the State Court stay or continue the Altum Defendants' motion "pending disposition of the issues raised thereby in the parallel federal case and completion of jurisdictional discovery."  ECF No. 76-16 at 1-2.  The Altum Defendants opposed Plaintiff's cross-motion.  *See* Reply Memorandum of Law of Altum

Defendants at 6-12, *Miller-Rich*, No. 655172/2021, https://iapps.courts.state.ny.us/nyscef/

ViewDocument?docIndex=kJadM0oCA922RzCpObaYFg== [https://perma.cc/Z6ZT-

KWNA]; *see also* ECF No. 76-17 (Plaintiff's reply in support of her cross-motion in State

Court).

On December 1, 2022, the State Court held a hearing on the Altum Defendants'

motion to dismiss.  ECF No. 64-6 ("Decision").  Following argument by the parties, the State

Court ruled from the bench.  After outlining the background facts and the relevant legal

standards, the State Court stated:

> There is a cross-motion that this Court believes is moot.  The
> cross-motion seeks a stay pursuant to CPLR 2201 in deference
> to the parallel of the Federal Court action and further seeks a
> motion or seeks relief pursuant to CPLR 3211(b) for
> jurisdictional discovery.  The Court is of the view that that relief
> is moot under any circumstance and the Court is not inclined to
> hold this case open with respect to defendant Stephen Dattels
> either.
>
> I don't have a motion here, but, to the extent that Dattels, is a
> Florida resident, it still doesn't change the calculus about the
> various factors that relate to whether or not this Court is an
> appropriate forum.  Other than plaintiff's residence, which is a
> factor, there's nothing about this case that suggests that New
> York Supreme Court is an appropriate location.  To the extent
> that the Federal Court across the street is considering whether or
> not the 34 Act allegations provides a basis for it to entertain
> jurisdiction has nothing to do with whether or not this Court
> here would have any basis for proceeding with this claim.  Right
> now, there's the Federal Court as an alternative forum, which is
> the preferred forum evidently and there is a Canadian forum as
> well.
>
> So, it is hereby ordered that the motion to dismiss based on
> CPLR 327(a) is granted, and it will be granted with respect to
> all defendants, including, the nonmoving one who also is not a
> New York resident.  Accordingly, it is therefore ordered that the
> Complaint herein is dismissed in its entirety.

*Id.* at 18-20; *see* N.Y. C.P.L.R. 327(a) ("When the court finds that in the interest of substantial

justice the action should be heard in another forum, the court, on the motion of any party, may

stay or dismiss the action in whole or in part on any conditions that may be just.  The domicile or residence in this state of any party to the action shall not preclude the court from staying or dismissing the action.").  During a subsequent colloquy with Plaintiff's counsel, the State Court reiterated that it was "not making a statement about where [Plaintiff] brings a 34 Act claim" because it was "not within [the State Court's] province. . . . [T]o the extent that she consented to British Columbia, she has an alternative forum there."  Decision at 21.

After the hearing, the State Court issued a brief written order stating that "defendants' motion to dismiss this action on the ground that New York is an inconvenient forum . . . is granted in accordance with the attached so-ordered transcript, on the condition that defendants stipulate to accept service of process should this action be commenced in the courts of the Province of British Columbia, Canada."  *Id.* at 1.  The Altum Defendants and Dattels so stipulated.  ECF No. 64-7.  Plaintiff appealed the State Court's decision on February 22, 2023.  ECF No. 76-20.

Plaintiff filed the Amended Complaint in this Court on January 18, 2023.  *See generally* Am. Compl.  The Altum Defendants and Dattels filed motions to dismiss.  *See generally* Altum Br.; Dattels Br.  The Altum Defendants argue that: (1) "Plaintiff is collaterally estopped from disputing the applicability to this action of the doctrine of *forum non conveniens*," Altum Br. at 6 (further capitalization omitted); (2) if the Court conducts its own *forum non conveniens* analysis, it should dismiss this case, *see id.* at 10-18; (3) the Court lacks personal jurisdiction over the Altum Defendants, *see id.* at 18-22; (4) three of Plaintiff's causes of action fail to state claims of securities fraud, *see id.* at 23-24; and (5) "the Court lacks subject-matter jurisdiction and venue is improper" with respect to four of Plaintiff's causes of action, *id.* at 24 (further capitalization omitted).  Dattels makes similar arguments regarding *forum non conveniens* and personal jurisdiction; he also asserts that Plaintiff's sole

claim against him should be dismissed under Federal Rule of Civil Procedure ("Rule") 9(b)

and Rule 12(b)(6).  *See generally* Dattels Br.  Plaintiff requested leave to file a declaration in

further opposition to the motions to dismiss on November 27, 2023, which the Court will

grant.  ECF No. 79.  Both motions are therefore fully briefed.  *See generally* Opp.; Altum

Reply; Dattels Reply.[4]

**DISCUSSION**

**I.    Legal Standards of *Forum Non Conveniens* and Issue Preclusion**

"The doctrine of *forum non conveniens* is 'a discretionary device permitting a court in

rare instances to dismiss a claim even if the court is a permissible venue with proper

jurisdiction over the claim.'"  *Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234,

237 (2d Cir. 2004) (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir.

2000)).  The rationale for dismissing a case on *forum non conveniens* grounds is that "a court

abroad is the more appropriate and convenient forum for adjudicating the controversy."

---

[4] Rule 3(C) of the Court's Individual Rules of Practice in Civil Cases states that absent prior permission, "memoranda of law in support of and in opposition to motions are limited to 25 pages, and reply memoranda are limited to 10 pages."  The Altum Defendants' 25-page brief in support of their motion to dismiss has 40 footnotes, many featuring long case-law string cites and substantive arguments.  *See generally* Altum Br.  Their 10-page reply brief has 14 footnotes of similar length and substance.  *See generally* Reply Br.  It appears to the Court that the Altum Defendants sought to use such footnotes to circumvent the Court's page-limit requirements.  The Court would be within its rights to disregard the footnotes under the general principle that an argument made only in a footnote may be treated as forfeited or waived.  *See, e.g.*, *Ide v. British Airways PLC*, 529 F. Supp. 3d 73, 82 (S.D.N.Y. 2021); *Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 314 (S.D.N.Y.), *aff'd*, 626 F. App'x 20 (2d Cir. 2015) (summary order).  The Court will not do so, but "counsel is warned that the Court will not countenance similar gamesmanship in future cases."  *D.P. v. N.Y.C. Dep't of Educ.*, No. 21-cv-00027 (KPF), 2022 WL 103536, at *1 n.1 (S.D.N.Y. Jan. 10, 2022).

The parties also requested oral argument via a notation on their briefs.  The Court declines to hold oral argument because the parties' briefing was sufficient and oral argument would not materially assist the Court.  *See Dotson v. Griesa*, 398 F.3d 156, 159 (2d Cir. 2005) (A "district court acts well within its discretion in deciding dispositive motions on the parties' written submissions without oral argument.").

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007).  A district court may address a *forum non conveniens* argument before considering whether it has subject-matter or personal jurisdiction.  *Id.*  The Court does so here.

"In general, . . . when a defendant moves to dismiss on the ground of *forum non conveniens*, courts assess: (1) the deference to be accorded the plaintiff's choice of forum; (2) the adequacy of the alternative forum proposed by the defendants; and (3) the balance between the private and public interests implicated in the choice of forum."  *Fasano v. Yu Yu*, 921 F.3d 333, 335 (2d Cir. 2019) (per curiam).  "The decision to dismiss a case on *forum non conveniens* grounds lies wholly within the broad discretion of the district court."  *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (en banc) (quotation marks and citation omitted).  Before performing a *forum non conveniens* analysis, however, the Court first must determine whether (as Defendants argue) the State Court's "*forum non conveniens* dismissal precludes this action" under the doctrine of issue preclusion, also known as collateral estoppel.  Altum Br. at 7; *see also* Dattels Br. at 16-17 (same argument).

The doctrine of issue preclusion provides that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."  Restatement (Second) of Judgments § 27 (Am. L. Inst. 1982).  "It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).  Here, a New York court rendered the prior state-court judgment, so the Court will apply New York law on issue preclusion.  *See, e.g.*, *Simmons v. Trans Express Inc.*, 955 F.3d 325, 328 (2d Cir. 2020); *Jenkins v. City of New York*, 478 F.3d 76, 85 (2d Cir. 2007).

11

Under New York law, issue preclusion "comes into play when four conditions are fulfilled: (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Conason v. Megan Holding, LLC*, 29 N.E.3d 215, 224 (N.Y. 2015) (quotation marks and citation omitted). "The party seeking to invoke [issue preclusion] has the burden to show the identity of the issues, while the party trying to avoid application of the doctrine must establish the lack of a full and fair opportunity to litigate." *In re Dunn*, 27 N.E.3d 465, 468 (N.Y. 2015) (per curiam). Deciding whether issue preclusion applies entails "a practical inquiry into the realities of the litigation." *Auqui v. Seven Thirty One Ltd. P'ship*, 3 N.E.3d 682, 685 (N.Y. 2013) (quoting *Jeffreys v. Griffin*, 801 N.E.2d 404, 409 (N.Y. 2003)).

Plaintiff disputes only the first two conditions for issue preclusion. She argues that the State Court "expressly declined to make a determination as to which of the two competing fora, this federal Court or the [British Columbia] Action, was the preferred forum for resolution of the dispute." Opp. at 34 (emphasis omitted). Plaintiff further argues that because the State Court declined to determine whether British Columbia or the Southern District of New York was the more appropriate forum, "there is no ruling that could serve as a basis for collateral estoppel." *Id.* at 39 n.6. Plaintiff also states that because this Court has subject-matter jurisdiction over the Exchange Act claim and two of the named Defendants (Toth and Mimran) were not parties to the State Court case, "there is no identity of issues that could serve as a basis for collateral estoppel." *Id.* The Court's inquiry therefore turns to determining precisely what the State Court decided and what, if any, preclusive effect that decision has here.

II.   **Preclusive Effect of the State Court's Decision**

The State Court decided that the Supreme Court of New York was an improper forum for this dispute under *forum non conveniens*. *See* Decision at 19 (focusing on "whether or not *this Court* is an appropriate forum" (emphasis added)). The issue before the Court now is whether the Southern District of New York is an improper forum under *forum non conveniens*. These are not identical issues and therefore the State Court's decision does not have preclusive effect on this Court's decision.

Concededly, the State Court's two-page written order stated that the State Court was granting "defendants' motion to dismiss this action on the ground that *New York* is an inconvenient forum." *Id.* at 1 (emphasis added). But the motion was "granted *in accordance with the attached so-ordered transcript*" from the motion hearing. *Id.* (emphasis added). As the transcript makes plain, the State Court held only that the Supreme Court of New York was an inconvenient forum compared to the Southern District of New York and the British Columbia Court. The State Court expressly declined to decide the issue arising here – namely, whether the Southern District of New York or the British Columbia Court is the more convenient forum. *See id.* at 18-20. Because the issue decided by the State Court is not identical to the issue confronting this Court, Plaintiff is not precluded from contesting Defendants' *forum non conveniens* argument. *See Conason*, 29 N.E.3d at 224 (issue preclusion applies only if "the issues in both proceedings are identical" (citation omitted)).

Defendants disagree. They assert that "the central issue" facing the State Court "was the same as the dispositive issue now before this Court – whether British Columbia is the more convenient forum." Altum Br. at 8. In turn, Defendants contend, the State Court made the "specific[] finding that British Columbia is a more convenient forum for the adjudication of [Plaintiff's] claims." *Id.* at 4 (further capitalization omitted); *see also* Dattels Br. at 16-19

(making the same claim).  The record refutes this argument.  Again, the State Court focused

on whether the "*New York Supreme Court* is an appropriate location," not whether the British

Columbia Court is more appropriate than the Southern District of New York.  Decision at 19

(emphasis added).  The State Court specifically identified "the Federal Court as an alternative

forum," and the "Canadian forum" as another alternative, *id.*, and it insisted that it was "not

within [its] province" to "mak[e] a statement about where [Plaintiff] brings [an Exchange Act]

claim," *id.* at 21.  Thus, the State Court did not address the issue raised here: whether the

British Columbia Court is a more appropriate forum than the Southern District of New York

based on *forum non conveniens*.  Several precedents cited by Defendants are easily

distinguished because, in those cases, the prior court decided that a particular *state* was an

inconvenient forum – not that a particular *court* was an inconvenient forum.  *See, e.g.*, *Hume

v. Lines*, No. 12-cv-06378, 2016 WL 6524285, at *15 (W.D.N.Y. Nov. 3, 2016) (prior court

"straightforwardly ruled" that New York was most appropriate forum); *Skewes v. Masterchem

Indus., LLC*, No. 05-cv-01047, 2005 WL 3555931, at *3 (E.D. Mo. Dec. 23, 2005) (prior

court "specifically found that Canada was a more convenient forum than Missouri").  Given

the lack of identity between the issue decided in State Court and the issue presented here, the

Court rejects Defendants' invocation of issue preclusion.[5]

## III.    Applying *Forum Non Conveniens* Analysis

Defendants argue that even if issue preclusion does not apply, the Court should

dismiss this case on *forum non conveniens* grounds.  *See* Altum Br. at 10-18; Dattels Br. at

19-22.  The Court agrees.

---

[5] Plaintiff alternatively argues that the State Court's decision cannot be given preclusive effect
because it has been appealed.  *See* Opp. at 39 n.6.  The Court need not reach this argument.

As noted, courts ordinarily consider three factors when a defendant moves to dismiss on *forum non conveniens* grounds: "(1) the deference to be accorded the plaintiff's choice of forum; (2) the adequacy of the alternative forum proposed by the defendants; and (3) the balance between the private and public interests implicated in the choice of forum." *Fasano*, 921 F.3d at 335; *see Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (listing private-interest and public-interest factors).  Most of the parties' non-issue-preclusion-related briefing of *forum non conveniens* focuses on applying the standard three-part test to the facts of this case.  *See* Altum Br. at 10-18; Dattels Br. at 19-22; Opp. at 35-42; Altum Reply at 6-7; Dattels Reply at 8-10.  But the *forum non conveniens* analysis is altered where there is a mandatory forum-selection clause.  Specifically, here, Section 10 of the Schedule to the Settlement Agreement states that the parties "hereby irrevocably submit to *the exclusive jurisdiction of the courts of British Columbia* with respect to any matter arising hereunder or related hereto."  Settlement Agreement at 11 (emphasis added).

"A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum."  *Sinochem*, 549 U.S. at 430.  "Where the parties have contractually selected a forum, however, the forum selection clause 'substantially modifies' the *forum non conveniens* doctrine and the 'usual tilt in favor of the plaintiff's choice of forum gives way to a presumption in favor of the contractually selected forum.'"  *Fasano*, 921 F.3d at 335 (brackets omitted) (quoting *Martinez v. Bloomberg LP*, 740 F.3d 211, 218 (2d Cir. 2014)); *see id.* at 336 (district court abused its discretion by failing to consider mandatory forum-selection clause when conducting *forum non conveniens* analysis).  "[A]s the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted."  *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013).

The Second Circuit "employ[s] a four-part framework when determining whether to dismiss a claim based on a forum selection clause under the modified doctrine of *forum non conveniens*." *Rabinowitz v. Kelman*, 75 F.4th 73, 81 (2d Cir. 2023). First, the court examines "whether the clause was reasonably communicated to the party resisting enforcement." *Id.* (quoting *Martinez*, 740 F.3d at 217). Second, the court evaluates "'whether the clause is mandatory,' that is, whether the parties are *required* to bring any dispute to the designate forum or simply *permitted* to do so." *Id.* (quoting *Martinez*, 740 F.3d at 217). Third, the court determines "whether the claims and parties involved in the suit are subject to the forum selection clause." *Id.* (quoting *Martinez*, 740 F.3d at 217). "If the answer to all three questions is yes, the clause is 'presumptively enforceable.'" *Id.* (quoting *Martinez*, 740 F.3d at 217). Moving then to the fourth step, the court determines "whether the resisting party has rebutted that presumption by 'making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* (quoting *Martinez*, 740 F.3d at 217). The Court addresses each step of the analysis in turn.

## A. The Forum-Selection Clause Was Reasonably Communicated to the Party Opposing Enforcement

The first step of the modified *forum non conveniens* analysis asks "whether the clause was reasonably communicated to the party resisting enforcement." *Id.* (citation omitted). "In the Second Circuit, courts assume that a forum-selection clause stated in clear and unambiguous language was reasonably communicated to the plaintiff." *Speedfit LLC v. Woodway USA, Inc.*, 642 F. Supp. 3d 429, 443-44 (S.D.N.Y. 2022) (quotation marks and citation omitted); *see George V Eatertainment S.A. v. Elmwood Ventures LLC*, No. 22-cv-08047 (JLR), 2023 WL 2403618, at *3 (S.D.N.Y Mar. 8, 2023) ("Where the parties' briefs do

16

not rely on the law chosen in the agreement, the court may instead interpret the forum-selection clause under federal law and general contract principles.").

The Court finds that the forum-selection clause in Section 10 of the schedule of the Settlement Agreement was written in clear and unambiguous language, thus supporting the presumption that the clause was reasonably communicated to Plaintiff. Plaintiff never suggests otherwise. *See generally* Opp. Indeed, Plaintiff covenanted to the contrary. *See* Settlement Agreement at 10 (Plaintiff "declare[s]" that she executes the schedule "voluntarily with full knowledge of its terms and conditions"; Plaintiff "acknowledges and declares that she fully understands" the schedule). Thus, this step favors dismissal.

### B. The Forum-Selection Clause is Mandatory

The second step of the modified *forum non conveniens* analysis focuses on "'whether the clause is mandatory,' that is, whether the parties are *required* to bring any dispute to the designated forum or simply *permitted* to do so." *Rabinowitz*, 75 F.4th at 81 (citation omitted). "A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." *S.K.I. Beer Corp. v. Baltika Brewery*, 612 F.3d 705, 708 (2d Cir. 2010) (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007)).

Section 10 of the schedule states that "[t]he parties hereby irrevocably submit to the exclusive jurisdiction of the courts of British Columbia with respect to any matter arising hereunder or related hereto." Settlement Agreement at 11. Section 10 is clearly mandatory, not permissive. In particular, "[t]he phrase 'irrevocably submits to the exclusive jurisdiction' . . . makes clear that the parties intended that the courts of [British Columbia] be the sole forum for any disputes arising out of this contract." *Virgin Austl. Reg'l Airlines Pty Ltd. v. JetPro Int'l LLC*, No. 20-cv-06737 (ALC), 2022 WL 4234551, at *3 (S.D.N.Y. Sept. 14,

2022) (emphasis omitted); *accord Reed Int'l, Inc. v. Afg. Int'l Bank*, --- F. Supp. 3d ----, 2023 WL 2138600, at *12 (S.D.N.Y. Feb. 21, 2023) ("Both the reference to a specific location and the indication that the jurisdiction is exclusive[] show[] that this [forum-selection] clause is mandatory."); *George V Eatertainment*, 2023 WL 2403618, at *5 (clause stating that "the parties irrevocably submit to the exclusive jurisdiction of the Courts of London" is "precisely the type of language that courts have routinely relied upon to find forum selection clauses to be mandatory" (citation omitted)); *Ujvari v. 1stdibs.com, Inc.*, No. 16-cv-02216 (PGG), 2017 WL 4082309, at *9 (S.D.N.Y. Sept. 13, 2017) (clause stating that "each of the parties irrevocably submits for all purposes in connection with this Agreement to the exclusive jurisdiction of the courts of England" is "unquestionably mandatory, as it contains both language of exclusive jurisdiction and obligatory venue" (brackets and citation omitted)). Hence, this step favors dismissal.

### C.  The Claims and Parties are Subject to the Forum-Selection Clause

The third step of the modified *forum non conveniens* analysis asks "whether the claims and parties involved in the suit are subject to the forum selection clause." *Rabinowitz*, 75 F.4th at 81 (citation omitted).  Here, both the claims and the parties fall under the clause.

With respect to the claims, Plaintiff never argues that her claims fall outside the scope of any of the potentially implicated forum-selection clauses.  Plaintiff's only mention of these clauses is her assertion that *other* clauses, Article 12 of the Employment Agreement and Section 9 of the Settlement Agreement, are "non-exclusive" forum-selection clauses.  *See* Opp. at 14, 26.  Even if Plaintiff is correct in her characterization of those provisions, this contention does not address (let alone undermine) the exclusive forum-selection clause located in Section 10 of the schedule attached to the Settlement Agreement.  Plaintiff thus forfeits any argument that Section 10 is inapplicable to her claims in this case.  *See Rodriguez*

*v. Carson*, 401 F. Supp. 3d 465, 470 (S.D.N.Y. 2019) ("A party may forfeit a right or defense by actively litigating other issues and forgoing the opportunity to litigate that right or defense." (brackets omitted) (quoting *Roberts v. Bennaceur*, 658 F. App'x 611, 616 (2d Cir. 2016) (summary order))).

Even if Plaintiff had made such an argument, Section 10 – which encompasses all "matter[s] arising []under or related []to" the schedule, Settlement Agreement at 11 – is "the paradigm of a broad clause," *New London Assocs., LLC v. Kinetic Soc. LLC*, 384 F. Supp. 3d 392, 406 (S.D.N.Y. 2019) (quoting *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995)). "When 'arising out of,' 'relating to,' or similar words appear in a forum selection clause, such language is regularly construed to encompass securities, antitrust, and tort claims associated with the underlying contract." *Credit Suisse Sec. (USA) LLC v. Hilliard*, 469 F. Supp. 2d 103, 107 (S.D.N.Y. 2007); *see Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128-29 (2d Cir. 2001) (Sotomayor, J.) (discussing differences in scope between "arising out of" and "related to"). Here, Section 10 of the schedule appended to the Settlement Agreement covers all of Plaintiff's claims.

Most obviously, Claim V directly alleges breach of the Settlement Agreement. *See* Am. Compl. ¶¶ 103-110. It is self-evident that an alleged breach of the Settlement Agreement is a "matter arising []under or related []to" the schedule appended to the Settlement Agreement. Settlement Agreement at 11. Plaintiff's Claims I, III, and IV center on the Employment Agreement. *See* Am. Compl. ¶ 80 (Claim I: "Plaintiff relied on defendants' representations in continuing to remain employed at Altum and discharge her obligations under the Employment Agreement."); *id.* ¶ 91 (Claim III: "Defendant Altum and Doroudian, directly or indirectly, singly or in concert, made the false Altum Stock Misrepresentations with an intent to defraud plaintiff of the compensation justly due and owing to her under the

Employment Agreement."); *id.* ¶ 101 (Claim IV: "Altum's refusal to pay the compensation due was in material breach of the Employment Agreement."). As noted, the Settlement Agreement provides that it "supersedes and replaces any and all other agreements, arrangements or understandings between or among the parties" – including, presumably, the Employment Agreement. Settlement Agreement at 2. Insofar as the Settlement Agreement supersedes the Employment Agreement, and includes releases that pertain to the Plaintiff "having been an employee, director and/or officer of Altum," *id.* at 9, Plaintiff's Employment Agreement-related claims are matters "related []to" to Settlement Agreement (and, by extension, the appended schedule), *id.* at 11. Finally, Plaintiff's common-law-fraud claim (Claim II) alleges that Defendants made "false misrepresentations with an intent to defraud plaintiff of her Altum stock interest," and that she "reasonably relied on these misrepresentations in tendering her Altum shares in connection with the [merger agreement between Altum and BetterLife]." Am. Compl. ¶¶ 84-85. Similarly, in Count I, Plaintiff asserts that she relied on the representations constituting securities fraud in continuing to remain employed at Altum and to discharge her obligations under the Employment Contract. *Id.* ¶ 80. Significantly, Plaintiff received her Altum shares as part of her compensation under the Consulting Agreement and the Employment Agreement. Both of those contracts were then "supersede[d] and replace[d]" by the Settlement Agreement that contained releases concerning Plaintiff's employment with Altum. Settlement Agreement at 2. Thus, Claims I and II – centering on shares received under contracts superseded by the Settlement Agreement and potentially implicating releases that are contained in the Settlement Agreement – are "tort claims associated with the underlying contract," that is, the Settlement Agreement. *Credit Suisse*, 469 F. Supp. 2d at 107. Thus, all of Plaintiff's claims are sufficiently associated with the Settlement Agreement to fall within the scope of Section 10's forum-selection clause.

With respect to the parties, it is true that only Plaintiff, Altum, and Doroudian signed the schedule to the Settlement Agreement; BetterLife, Dattels, Toth, Mimran, the Does, and the Corporations did not.  *See* Settlement Agreement at 12-13.  But "the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009).  Pertinently, "'a non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is closely related to another signatory' such that 'the non-signatory's enforcement of the forum selection clause is foreseeable to the signatory against whom the non-signatory wishes to enforce the forum selection clause.'" *Amto, LLC v. Bedford Asset Mgmt., LLC*, 168 F. Supp. 3d 556, 569 (S.D.N.Y. 2016) (quoting *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013)).  "Applying this rule, courts in the Second Circuit have permitted non-parties to enforce forum selection clauses where the signatory's claims against the non-signatory defendant are substantially identical to its claims against a signatory defendant." *Id.* (collecting cases).

Both requirements for non-signatory enforcement of a forum-selection clause are met here.  First, all of the non-signatory Defendants are "closely related" to Altum and/or Doroudian. *Magi XXI*, 714 F.3d at 723 (citation omitted).  BetterLife – having acquired Altum – is Altum's successor in interest, and successors in interest "unquestionably fit within the definition of 'closely related'" parties for purposes of non-signatory enforcement of a forum-selection clause. *KTV Media Int'l, Inc. v. Galaxy Grp., LA LLC*, 812 F. Supp. 2d 377, 386 (S.D.N.Y. 2011); *see, e.g.*, *Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*, 785 F. App'x 18, 19 (2d Cir. 2019) (summary order) (permitting non-signatory successor to enforce forum-selection clause signed by predecessor); *Blattman v. Siebel*, No. 14-cv-08588 (KBF), 2015

WL 13730770, at *1 (S.D.N.Y. June 17, 2015) (same).  On Plaintiff's own account, Dattels, Toth, and Mimran were major BetterLife shareholders who conspired with Doroudian to misappropriate the COVID-related interferon opportunity.  *See generally* Am. Compl. ¶¶ 47-77.  Plaintiff likewise describes the Does and the Corporations as "party to defendants' fraudulent conspiracy."  *Id.* ¶¶ 9-10; *see also id.* ¶ 76.  Thus, Dattels, Toth, Mimran, the Does, and the Corporations fit within a recognized category of "closely related" parties, namely, parties that allegedly acted in concert with signatories.  *See, e.g.*, *Horvath v. Banco Comercial Portugues, S.A.*, 461 F. App'x 61, 63-64 (2d Cir. 2012) (summary order); *Weingard v. Telepathy, Inc.*, No. 05-cv-02024 (MBM), 2005 WL 2990645, at *2, *5-6 (S.D.N.Y. Nov. 7, 2005); *see also H.A.L. NY Holdings, LLC v. Guinan*, No. 18-cv-02275 (ER), 2018 WL 5869648, at *4 (S.D.N.Y. Nov. 9, 2018) (collecting cases where "courts have found that . . . 'closely related' non-signatory corporate executives and officers are entitled to enforce a forum selection clause against signatory parties suing them in connection with their work at the signatory company").

Second, Plaintiff's claims against the non-signatory Defendants are "substantially identical" to her claims against the signatory Defendants.  *Amto*, 168 F. Supp. 3d at 569.  Indeed, Plaintiff's sole claim against the non-signatory Defendants – common-law fraud – is brought simultaneously against Altum and Doroudian.  *See* Am. Compl. ¶¶ 82-88 (Plaintiff's fraud claim brought against "all Defendants" (further capitalization omitted)).

In sum, the third step favors dismissal here.

### D.  Plaintiff Has Not Rebutted the Presumptive Enforceability of the Forum-Selection Clause

Because the first three steps of the modified *forum non conveniens* analysis are satisfied, Section 10's mandatory forum-selection clause is "presumptively enforceable."

*Rabinowitz*, 75 F.4th at 81 (citation omitted).  Thus, at the fourth step, Plaintiff must rebut the presumptive enforceability of the forum-selection clause by "making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching."  *Id.* (citation omitted); *see Atl. Marine*, 571 U.S. at 63 (A "valid forum-selection clause should be given controlling weight in all but the most exceptional cases." (brackets and citation omitted)).

Plaintiff has failed to make a sufficiently strong showing.  There are no allegations that the forum-selection clause was procured by fraud.  She has likewise not shown – let alone with the requisite strength – that enforcement of the contractually agreed-upon clause would be unreasonable or unjust.  As she concedes, the relevant "principles of breach of contract and fraud are the same in both jurisdictions," and "[t]here is congestion in the courts in both jurisdictions."  Opp. at 41; *cf. Piper Aircraft*, 454 U.S. at 241 n.6 (public-interest factors include "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action" and "the administrative difficulties flowing from court congestion" (citation omitted)).  Plaintiff contends that "New York has a legitimate interest in the conduct of defendants who transacted substantial business in this State, utilized its capital markets and banking resources and solicited investors here with New York press releases and SEC public filings."  Opp. at 41-42 (quotation marks and citation omitted); *cf. Piper Aircraft*, 454 U.S. at 241 n.6 (another public-interest factor is the "local interest in having localized controversies decided at home" (citation omitted)).  While that may be true, Plaintiff never persuasively explains how this case – involving parties from multiple regions of two different countries – qualifies as a "localized controvers[y]."  *Piper Aircraft*, 454 U.S. at 241 n.6 (citation omitted). Further, Plaintiff is bringing claims related to her former employment with a British Columbian entity, whose corporate books and records are presumably located, in

large part, in British Columbia, against, among others, her former employer living in British Columbia, with a governing law provision in the Employment Agreement that requires the application of British Columbian law.

Plaintiff also contends that "British Columbia is not a suitable alternative forum for this dispute." Opp. at 39. She says that because "Dattels, Toth and Mimran are located in Toronto, New York and Palm Beach and have not agreed to waive *in personam* jurisdiction defenses, there is every reason to believe they would challenge personal jurisdiction in British Columbia and also assert the [statute-of-]limitations bar." *Id.* The Court rejects this argument.

Generally, "[a]n alternative forum is adequate if: (1) the defendants are subject to service of process there; and (2) the forum permits litigation of the subject matter of the dispute." *Wallert v. Atlan*, 141 F. Supp. 3d 258, 281 (S.D.N.Y. 2015) (quoting *Cap. Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 609 (2d Cir. 1998)). An alternative forum is inadequate if (among other reasons) "a statute of limitations bars the bringing of the case in that forum." *Bank of Credit & Com. Int'l (Overseas) Ltd. v. State Bank of Pak.*, 273 F.3d 241, 246 (2d Cir. 2001). Plaintiff arguably has waived any adequacy-related objections by agreeing to the forum-selection clause in Section 10 of the schedule. *See Giordano v. UBS, AG*, 134 F. Supp. 3d 697, 703 (S.D.N.Y. 2015) (*Atlantic Marine* "precludes" any argument that a jurisdiction is "an inadequate forum" for a dispute "because it explains that a 'valid forum-selection clause represents the parties' agreement as to the most proper forum'" (ellipsis omitted) (quoting *Atl. Marine*, 571 U.S. at 63)). Indeed, Plaintiff consented to the British Columbia Court's jurisdiction in three different writings – the Employment Agreement, the Settlement Agreement, and the schedule appended to the Settlement Agreement – thus undercutting the plausibility of her current argument that the

British Columbia Court is inadequate.  Further, Plaintiff provides no reason for concluding

that the British Columbia Court would lack personal jurisdiction over Dattels, Toth, and

Mimran, or that the statute of limitations would bar Plaintiff's suit against them there.[6]

Plaintiff merely expresses the vague concern that Dattels, Toth, and Mimran *might* make such

arguments.  *See, e.g.*, Opp. at 39.  Such a hypothetical possibility, without more, is an

insufficient basis for this Court to disregard the unambiguous agreed-upon language of

Section 10's forum-selection clause.

Finally, Plaintiff never argues that the British Columbia Court would not "permit[]

litigation of the subject matter of the dispute," including Plaintiff's claims arising under

federal securities laws.  *Cap. Currency Exch.*, 155 F.3d at 609 (quotation marks and citation

omitted).  Under Section 27 of the Exchange Act, federal district courts "have exclusive

jurisdiction . . . of all suits in equity and actions at law brought to enforce any liability or duty

created by [the Exchange Act] or the rules and regulations thereunder."  15 U.S.C. § 78aa(a).

Section 27's grant of "exclusive jurisdiction" precludes state courts from exercising

jurisdiction over Exchange Act claims.  *See Merrill Lynch, Pierce, Fenner & Smith Inc. v.*

*Manning*, 578 U.S. 374, 388, 390 (2016) (Section 27 confers upon federal courts "exclusive

jurisdiction of suits 'arising under' the Exchange Act"; when a statute mandates federal

jurisdiction over certain claims, it "depriv[es] state courts of all ability to adjudicate [those]

claims").  However, other non-state-court tribunals have adjudicated Exchange Act claims.

*See, e.g.*, *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227-38 (1987) (enforcing

agreement to arbitrate Exchange Act claims); *Alfadda v. Fenn*, 159 F.3d 41, 45, 49 (2d Cir.

1998) (affirming *forum non conveniens* dismissal of Exchange Act claims in favor of French

---

[6] As noted, the Altum Defendants and Dattels have stipulated that they will accept service for
an action in British Colombia. ECF No. 64-7.

forum); *Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996, 998, 1000-02 (2d Cir. 1993)

(same for Australian forum); *Howe v. Goldcorp. Invs., Ltd.*, 946 F.2d 944, 945 (1st Cir. 1991)

(Breyer, C.J.) (same for Canadian forum).

In sum, every part of the modified *forum non conveniens* framework favors enforcing

the forum-selection clause, and Plaintiff has offered no persuasive argument to the contrary.

This is not one of those "rare case[s]" where "a court may decline to enforce a forum selection

clause" because "the resisting party satisfies the heavy burden of showing that 'it would be

unfair, unjust, or unreasonable to hold that party to his bargain.'" *Rabinowitz*, 75 F.4th at 81

(quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972)). The Court will

therefore dismiss this case on the ground of *forum non conveniens*.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for leave to submit a declaration in

further opposition to the motions to dismiss (ECF No. 79) is GRANTED. The Altum

Defendants' motion to dismiss and Dattel's motion to dismiss are GRANTED. Plaintiff's

conditional cross-motion for jurisdictional discovery is DENIED as moot. The Clerk of Court

is respectfully directed to terminate the motions (ECF Nos. 62, 65, 70, and 79) and close this

case.

Dated: November 27, 2023
       New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge