UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NANCY MILLER-RICH,

                    Plaintiff,

      -against-

ALTUM PHARMACEUTICALS INC.,
BETTERLIFE PHARMA INC., AHMAD
DOROUDIAN, STEPHEN DATTELS, KRISZTIAN
TOTH, JOSEPH MIMRAN, JOHN AND JANE
DOES 1-50, and ABC CORPORATIONS 1-20,

                    Defendants.

Case No. 1:22-cv-03473 (JLR)

**<u>OPINION AND ORDER</u>**

---

JENNIFER L. ROCHON, United States District Judge:

Nancy Miller-Rich ("Plaintiff") moves for reconsideration of *Miller-Rich v. Altum Pharmaceuticals Inc.*, No. 22-cv-03473 (JLR), 2023 WL 8187875 (S.D.N.Y. Nov. 27, 2023) ("*Miller-Rich I*"). ECF No. 82 ("Recon. Br."). For the reasons set forth below, the Court denies Plaintiff's motion.

## BACKGROUND

The Court generally assumes the parties' familiarity with Plaintiff's allegations and the procedural history, as recounted in *Miller-Rich I*, and discusses only those details necessary to explain its decision here. *See* 2023 WL 8187875, at *2-5; *see also* ECF No. 50-1 (the "Consulting Agreement" or "Consult. Ag."); ECF No. 50-2 (the "Employment Agreement" or "Emp. Ag."); ECF No. 50-3 at 1-5 (the "Settlement Agreement" or "Set. Ag."); ECF No. 50-3 at 8-13 (the "Release" or "Rel.").[1]

---

[1] *Miller-Rich I* accurately referred to the Release as a "schedule" appended to the Settlement Agreement. *See, e.g.*, 2023 WL 8187875, at *3. Here, the Court refers to it as the "Release" to reflect the terminology used by Plaintiff in her briefs on the motion for reconsideration.

On April 28, 2022, Plaintiff initiated this action against Altum Pharmaceuticals Inc. ("Altum"), BetterLife Pharma Inc. ("BetterLife"), Ahmad Doroudian, Stephen Dattels, Krisztian Toth, Joseph Mimran, John and Jane Does 1-50 (the "Does"), and ABC Corporations 1-20 (the "Corporations" and, collectively, "Defendants").  ECF No. 1.  Plaintiff asserted five claims in the operative complaint.  ECF No. 50 (the "Amended Complaint" or "Am. Compl.").  First, Plaintiff alleged that Altum and Doroudian engaged in federal securities fraud, and that "Plaintiff relied on defendants' representations in continuing to remain employed at Altum and discharge her obligations under the Employment Agreement." *Id.* ¶¶ 78-81 ("Claim I"); *see also id.* ¶ 42.  Second, Plaintiff alleged that all Defendants engaged in common-law fraud by making misrepresentations in various public statements, and that "Plaintiff reasonably relied on these misrepresentations in tendering her Altum shares in connection with the [merger between Altum and BetterLife]."  *Id.* ¶¶ 82-88 ("Claim II"); *see also id.* ¶ 73.  Third, Plaintiff alleged that Altum and Doroudian engaged in common-law fraud, and that "Plaintiff reasonably relied on the[ir] misrepresentations in continuing her employment with Altum."  *Id.* ¶¶ 89-95 ("Claim III").  Fourth, Plaintiff alleged that Altum breached the Employment Agreement.  *Id.* ¶¶ 96-102 ("Claim IV").  Fifth, Plaintiff alleged that Altum breached the Settlement Agreement.  *Id.* ¶¶ 103-110 ("Claim V").

Altum, BetterLife, Doroudian, and Dattels (collectively, the "Appearing Defendants") appeared and waived any potential objections to service of process.  ECF Nos. 14, 16, 18, 21. Although Plaintiff requested the issuance of summonses for Mimran and Toth, ECF Nos. 56-57, Plaintiff never submitted proof of service of process for Toth, Mimran, the Does, or the

Corporations (collectively, the "Non-Appearing Defendants"), and none of the Non-Appearing Defendants has appeared.[2]

In *Miller-Rich I*, the Court granted the Appearing Defendants' motions to dismiss the Amended Complaint on the ground of *forum non conveniens*. *See* 2023 WL 8187875, at *8-13.[3] On December 11, 2023, Plaintiff moved for reconsideration of that decision. Recon. Br.

_____

[2] Plaintiff reports that she is seeking to serve Toth and Mimran under the Hague Convention. ECF No. 88. Plaintiff has not moved the Court to authorize alternative service.

[3] In *Miller-Rich I*, the Court stated that it was granting the Appearing Defendants' motions to dismiss, and it ordered the Clerk of Court to close the case. *See* 2023 WL 8187875, at *13. Now having the opportunity to do so, the Court wishes to clarify the basis for dismissal of the claims against the Non-Appearing Defendants. As several courts in this District have held, when a court grants a served defendant's motion to dismiss (including on grounds of *forum non conveniens*), the court may also dismiss claims against an unserved defendant *sua sponte* where "the same points control the claims against [the unserved defendant]." *Virtual Dates, Inc. v. Afternic.com, Inc.*, No. 01-cv-04023 (LAK), 2001 WL 1646451, at *2 (S.D.N.Y. Dec. 20, 2001); *see, e.g.*, *Star Colbert v. Dougan*, No. 23-cv-07297 (CM), 2024 WL 1197863, at *25 (S.D.N.Y. Mar. 20, 2024) ("Several of the Defendants . . . have not been served with process in this case and did not join in the motion to dismiss. Nevertheless, dismissal of the claim against them is warranted because the Court's holdings above necessarily establish the inadequacy of the Complaint as to them. Accordingly, Plaintiffs' Swiss law claim against the unserved Defendants is dismissed on *forum non conveniens* grounds." (brackets, quotation marks, and citations omitted)); *Cartwright v. D'Alleva*, No. 17-cv-05953 (AT), 2018 WL 9343524, at *9 (S.D.N.Y. Aug. 27, 2018) ("[The Unserved Defendants] have not been served with process in this case, and did not, therefore, join the Moving Defendants' motion to dismiss. The same grounds for dismissal of the Moving Defendants, however, warrant dismissal of the Amended Complaint as to the Unserved Defendants. Accordingly, the Amended Complaint is DISMISSED with respect to the Unserved Defendants."), *aff'd*, 782 F. App'x 77 (2d Cir. 2019) (summary order); *Banco De Serguros Del Estado v. J.P. Morgan Chase & Co.*, 500 F. Supp. 2d 251, 265 n.18 (S.D.N.Y. 2007) ("[T]he non-moving Defendants have not been served. However, even had they been served and even in the more unlikely event that the Court had found that it had personal jurisdiction over them, it would still dismiss the case against them on the ground of forum non conveniens."). The Court thus dismisses the claims against the Non-Appearing Defendants "for the same reasons applicable to [the Appearing Defendants]," *Curry v. Kim*, No. 22-cv-04127 (PMH), 2023 WL 7625859, at *6 n.8 (S.D.N.Y. Nov. 14, 2023): namely, that either through enforcement of the Release's forum-selection clause or under the conventional three-part analysis, this case should be dismissed for *forum non conveniens*.

Defendants opposed Plaintiff's motion on December 22, 2023.  ECF No. 83 ("Recon. Opp.").

Plaintiff replied on December 29, 2023.  ECF No. 86 ("Recon. Reply").

## LEGAL STANDARD

"A motion for reconsideration is an extraordinary request that is granted only in rare

circumstances."  *Van Buskirk v. United Grp. of Cos.*, 935 F.3d 49, 54 (2d Cir. 2019).  Such a

motion "is not a vehicle for relitigating old issues, presenting the case under new theories,

securing a rehearing on the merits, or otherwise taking a second bite at the apple."  *Analytical*

*Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quotation marks and

citation omitted).  "[R]econsideration will generally be denied unless the moving party can

point to controlling decisions or data that the court overlooked – matters, in other words, that

might reasonably be expected to alter the conclusion reached by the court."  *Van Buskirk*, 935

F.3d at 54 (citation omitted).

## DISCUSSION

The Court adheres to its decision that the Release's forum-selection clause applies to

all of Plaintiff's claims, thus warranting *forum non conveniens* dismissal.  *See Miller-Rich I*,

2023 WL 8187875, at *8-13.  The Court also concludes, in the alternative, that dismissal of

this case is warranted in any event under the conventional *forum non conveniens* analysis.

### I.    The Release's Forum-Selection Clause Requires Dismissal

Plaintiff makes several arguments for reconsideration.  The Court rejects them all.

#### A.  Plaintiff's Claims Arise Under or Relate to the Release

Plaintiff argues that the Court "misapprehended" the nature of her claims.  Recon. Br.

at 2.  According to Plaintiff, "the Court should have conducted a plenary review and sustained

[Plaintiff's] choice of forum" because Plaintiff "seeks no relief under the Release" and her

"claims are not predicated on the Release in any way."  *Id.* at 1-2.

That Plaintiff is not "relying on the Release in asserting her claims," *id.* at 2, does not mean that the Release's forum-selection clause is inapplicable to those claims. On the contrary, as the Court explained in *Miller-Rich I*, 2023 WL 8187875, at *10, each of Plaintiff's claims involves "matter[s] arising []under or related []to" the Release, Rel. § 10, and thus is subject to the Release's forum-selection clause.[4]

None of the cases cited by Plaintiff requires a different conclusion. *See* Recon. Br. at 3-4 (citing *Collins & Aikman Prods. Co. v. Bldg. Sys.*, 58 F.3d 16 (2d Cir. 1995); *Phillips v. Audio Active, Ltd.*, 494 F.3d 378 (2d Cir. 2007); *Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d 679 (2d Cir. 1993); *Cheever v. Acad. Chi., Ltd.*, 685 F. Supp. 914 (S.D.N.Y. 1988)).

The Court begins with *Collins*. In that case, two companies, BSI and C & A, entered into two substantially similar contracts in 1977 (the "1977 Contracts"), pursuant to which BSI agreed to serve as C & A's sales representative. *See* 58 F.3d at 18. Each contract included a clause providing that "[a]ny claim or controversy arising out of or relating to this agreement shall be settled by arbitration in the City of New York in accordance with the Rules then obtaining of the American Arbitration Association." *Id.* In 1988, in anticipation of a potential

---

[4] The Court acknowledges that the Appearing Defendants did not primarily rely on the Release's forum-selection clause in their motion papers for *Miller-Rich I*. It is not true, however, that (as Plaintiff claims) no party "sought . . . dismissal predicated on the mandatory forum selection clause of the Release." Recon. Reply at 4. In their brief in support of their motion to dismiss, Altum, BetterLife, and Doroudian quoted the Release and argued that "because federal courts enforce mandatory forum-selection clauses, and to the extent Plaintiff's second through fifth causes of action concern facts and circumstances allegedly occurring prior to June 9, 2020, those causes of action must be dismissed." ECF No. 63 at 33. This argument sufficiently raised the Release's forum-selection clause as a ground for dismissal such that it was proper for the Court to rely upon it. *See United States v. Sineneng-Smith*, 590 U.S. 371, 380 (2020) ("a court is not hidebound by the precise arguments of counsel"). Further, the Second Circuit has held that a district court abuses its discretion if it "engage[s] in the traditional *forum non conveniens* analysis, without any consideration of [a mandatory] forum selection clause." *Fasano v. Yu Yu*, 921 F.3d 333, 336 (2d Cir. 2019) (per curiam). It was therefore appropriate for the Court to consider the full extent of the Release's forum-selection clause in ruling on the Appearing Defendants' motions to dismiss.

acquisition of BSI by C & A, the two companies entered into a confidentiality agreement (the "1988 Agreement") that "did not contain an arbitration provision, nor did it refer to or incorporate the 1977 Contracts." *Id.*  The merger never happened, and C & A terminated the 1977 Contracts in 1990. *See id.*  In 1993, BSI sought to compel arbitration of seven claims against C & A, including a claim for wrongful termination of the 1977 Contracts. *See id.* at 19.  On appeal, the Second Circuit held that BSI's wrongful-termination claim was properly sent to arbitration pursuant to the arbitration clause in the 1977 Contract. *See id.*  As for the other six claims, the Second Circuit held that they were "arbitrable to the extent that they [we]re particulars of that overarching claim [for wrongful termination], or allege torts committed in furtherance of that termination," *id.* at 23, and examined each claim individually to see if it arose out of or was related to the 1977 Contract, *see id.* at 20-23, just as the Court has done in this case, *see Miller-Rich I*, 2023 WL 8187875, at *10.

Plaintiff insists that her claims "present no question involving construction of the [Release], and no questions in respect of the parties' rights and obligations under it," and that the Release's forum-selection clause therefore does not apply to her claims.  Recon. Br. at 3 (alteration in original) (quoting *Collins*, 58 F.3d at 23).  The Court does not agree.

Although Plaintiff does not expressly invoke the Release in the Amended Complaint, she *does* expressly invoke the Settlement Agreement, particularly in Claim V where she alleges that Altum breached the Settlement Agreement.  *See* Am. Compl. ¶¶ 103-110.  The Settlement Agreement and the Release – which are attached to one another, refer to one another, were executed on the same date, and both concern the terms and conditions of Plaintiff's departure from Altum – "form part of a single transaction and are designed to effectuate the same purpose" and therefore "must be read together."  *TVT Recs. v. Island Def Jam Music Grp.*, 412 F.3d 82, 89 (2d Cir. 2005) (brackets and citation omitted); *accord Oak*

*Rock Fin., LLC v. Rodriguez*, 50 N.Y.S.3d 108, 111 (2d Dep't 2017) ("[T]he agreement and guaranty were executed sufficiently close in time and relate to the same subject matter, such that they should be interpreted together to determine the parties' intent to be bound by the forum selection clause [contained only in the agreement]."). [5]  In other words, the Settlement Agreement should be treated as a single writing.  Thus, Claim V clearly "present[s] . . . question[s] involving construction of the [Release]" and "the parties' rights and obligations under it."  *Collins*, 58 F.3d at 23.  The same is true for Claims I, III, and IV, which allege various misdeeds involving the Employment Agreement, *see Miller-Rich I*, 2023 WL 8187875, at *10 (quoting Am. Compl. ¶¶ 80, 91, 101), and thus are "matters 'related []to' [the] Settlement Agreement (and, by extension, the [Release])" because "the Settlement Agreement supersedes the Employment Agreement, and includes releases that pertain to the Plaintiff 'having been an employee, director and/or officer of Altum,'" *id.* (first alteration in original) (first quoting Rel. § 10; and then quoting Rel. § 3).  Likewise, Claim II – because it "center[s] on shares received under contracts superseded by the Settlement Agreement and potentially implicat[es] releases that are contained in the Settlement Agreement" – is sufficiently related to the Settlement Agreement (and the attached Release) to come within the broad language of the Release's forum-selection clause.  *Id.*

The other three cases cited by Plaintiff held that a plaintiff's copyright claim did not arise out of a contract between the plaintiff and the defendant, such that the contract's forum-selection clause did not apply.  *See Phillips*, 494 F.3d at 390-92; *Corcovado*, 981 F.2d at 681-

---

[5] The choice-of-law clauses in the Settlement Agreement and the Release select British Columbia law, but the parties do not cite any British Columbia cases in their letter briefs on the motion for reconsideration, nor did they in their briefs for *Miller-Rich I*.  The Court thus "appl[ies] general contract law principles and federal precedent to discern the meaning and scope of the forum clause[s]" in the Settlement Agreement and the Release.  *Glob. Seafood Inc. v. Bantry Bay Mussels Ltd.*, 659 F.3d 221, 224 n.3 (2d Cir. 2011) (citation omitted).

83; *Cheever*, 685 F. Supp. at 915-17.  These cases are inapposite.  To start, all three cases addressed the discrete issue of "the effect of a forum selection clause on a complaint that asserts claims arising under the Copyright Act."  *Phillips*, 494 F.3d at 381 (citing *Corcovado*); *see Corcovado*, 981 F.2d at 682 ("The *Cheever* case illustrates that where a plaintiff sues for copyright infringement and asserts no rights under a contract with the defendant containing a forum-selection clause, the forum-selection clause has no effect.").  That issue does not arise here because Plaintiff asserts no claims under the Copyright Act.

The cases are also distinguishable on additional grounds.  In *Phillips*, the recording contract in question provided that "any legal proceedings that may arise out of it are to be brought in England."  494 F.3d at 382.  The plaintiff alleged that "the defendants impermissibly manufactured and distributed songs to which [the plaintiff] retained a valid copyright."  *Id.* at 390.  The court held that the plaintiff's copyright claims did not arise out of the recording contract because his rights did not "originate from the recording contract."  *Id.* Notably, this holding depended on the fact that the forum-selection clause encompassed only claims that "arise out of" it, and the court expressly distinguished clauses that more expansively covered claims that "relate to" the contract.  *Id.* at 382; *see id.* at 389 ("We do not understand the words 'arise out of' as encompassing all claims that have some possible relationship with the contract, including claims that may only 'relate to,' be 'associated with,' or 'arise in connection with' the contract.").  In contrast, the forum-selection clause in the Release here encompasses "any matter arising hereunder *or related hereto*," Rel. § 10 (emphasis added), which is "broader in scope than the term 'arising out of'" alone, *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128-29 (2d Cir. 2001) (Sotomayor, J.); *accord New London Assocs. v. Kinetic Soc. LLC*, 384 F. Supp. 3d 392, 406 (S.D.N.Y. 2019) ("the phrase 'any claim or controversy arising out of or relating to the agreement' is 'the

8

paradigm of a broad clause'" (quoting *Collins*, 58 F.3d at 20)).  Given that the material

language here is different from the language in *Phillips*, that decision "does not control.

Instead, the Court must turn to cases dealing with broad forum selection clauses."  *BVM S.p.A.*

*in Liquidazione v. BVM USA Moda, Inc.*, No. 20-cv-06931 (JPC), 2021 WL 3077441, at *4

(S.D.N.Y. July 20, 2021).  And "[a]fter *Phillips*, courts in this Circuit have held that broad

forum selection clauses can apply to claims where the contract is relevant as a defense."  *Id.*

(ellipsis, quotation marks, and citation omitted).  The same result is warranted here, given the

broad forum-selection clause in the Release.

  *Phillips*, *Corcovado*, and *Cheever* are also each distinguishable on a further ground.

In each of those cases, the plaintiff's copyright claim was "not based on the existence of any

contract," let alone a contract that might contain a forum-selection clause.  *Laspata DeCaro*

*Studio Corp. v. Rimowa GmbH*, No. 16-cv-00934 (LGS), 2017 WL 1906863, at *6 (S.D.N.Y.

May 8, 2017) (distinguishing *Phillips* on this basis); *accord Cfirstclass Corp. v. Silverjet PLC*,

560 F. Supp. 2d 324, 330 (S.D.N.Y. 2008) ("In contrast to the copyright claim in *Phillips*, [the

plaintiff's] claims here rely fundamentally on the terms of the agreements."); *cf. Phillips*, 494

F.3d at 390 ("[The plaintiff] does not rely on the recording contract to establish his ownership

of the relevant copyrights, but on his authorship of the work, a status afforded him as the

composer who translates an idea into a fixed, tangible musical expression entitled to copyright

protection."); *Corcovado*, 981 F.2d at 682 ("The complaint asserts no rights whatsoever

arising out of those contracts, and they form no part of plaintiff Corcovado's case.  Plaintiff's

position is simply that the defendants infringed its renewal term copyrights."); *Cheever*, 685

F. Supp. at 917 ("The claims which are put forth by the plaintiffs in the amended complaint

are not a part of the publishing agreement, and, indeed, attempt to reject it as a source of any

license with respect to their copyrights.").  Here, in contrast, Claim V alleges a breach of the

Settlement Agreement, *see* Am. Compl. ¶¶ 103-110 – and the Settlement Agreement, as explained above, contains the Release.  And as explained above (and in *Miller-Rich I*), all of Plaintiff's other claims relate, in one way or another, to the Settlement Agreement.  In other words, this is not a case where "[t]he complaint asserts no rights whatsoever arising out of [the relevant] contracts."  *Corcovado*, 981 F.2d at 682.

In sum, the Court denies Plaintiff's attempt to evade the forum-selection clause included in the Release.

### B.  The Court's Interpretation is Doctrinally Sound

Plaintiff asserts that the Court's conclusions in *Miller-Rich I* "runs afoul of black-letter law" on interpreting contracts.  Recon. Br. at 4.  Specifically, Plaintiff argues that the Court's interpretations violate the principle that one should "interpret a contract so as to give meaning to all of its terms" because "the non-exclusive choice of forum clause of Section 9 is rendered superfluous by the exclusive provision of Section 10 of the annexed Release."  *Id.* at 4-5 (citation omitted); *see Glob. Seafood Inc. v. Bantry Bay Mussels Ltd.*, 659 F.3d 221, 225 (2d Cir. 2011) ("The general rule in cases containing forum selection clauses is that[,] when only jurisdiction is specified[,] the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive." (citation omitted)). *Compare* Set. Ag. § 9 ("[T]he parties hereto hereby irrevocably attorn to the jurisdiction of the Courts [of British Columbia]."), *with* Rel. § 10 ("The parties hereby irrevocably submit to the exclusive jurisdiction of the courts of British Columbia with respect to any matter arising hereunder or related hereto.").  Plaintiff maintains that the Court should "interpret the Settlement Agreement and accompanying Release to be subject to their respective choice of forum clauses," and that Claim V is subject only to the Settlement Agreement's non-exclusive forum-selection clause.  Recon. Br. at 5.

The Court is not persuaded by Plaintiff's attempt to cordon off the Settlement Agreement (and thus Claim V) from the Release. Ordinarily, "all writings which form part of a single transaction and are designed to effectuate the same purpose must be read together, even though they were executed on different dates and were not all between the same parties." *TVT Recs.*, 412 F.3d at 89 (brackets and citation omitted); *accord Oak Rock*, 50 N.Y.S.3d at 111. As noted above, the Settlement Agreement and the Release are attached to one another, refer to one another, were executed concurrently, and address the same central topic (namely, the terms and conditions of Plaintiff's departure from Altum). Accordingly, the Settlement Agreement and the Release must be read together as part of a single transaction. *See TVT Recs.*, 412 F.3d at 89; *Oak Rock*, 50 N.Y.S.3d at 111.

It is true that "courts should not adopt an interpretation that leaves a provision of a contract without force or effect." *International Brotherhood of Electrical Workers, Local Union 43 v. NLRB*, 9 F.4th 63, 75 (2d Cir. 2021). But it is also "a fundamental rule of contract construction that 'specific terms and exact terms are given greater weight than general language.'" *Aramony v. United Way of Am.*, 254 F.3d 403, 413 (2d Cir. 2001) (quoting Restatement (Second) of Contracts § 203(c) (Am. L. Inst. 1981)). "Even where there is no 'true conflict' between two provisions, 'specific words will limit the meaning of general words if it appears from the whole agreement that the parties' purpose was directed solely toward the matter to which the specific words or clause relate.'" *Id.* at 413-14 (quoting 11 Richard A. Lord, *Williston on Contracts* § 32:10, at 449 (4th ed. 1999)); *accord Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 106 N.E.3d 1176, 1185 (N.Y. 2018) ("[A] specific provision will not be set aside in favor of a catchall clause." (citation omitted)); *Fed. Ins. Co. v. Allstate Ins. Co.*, 341 A.2d 399, 407 (Md. 1975) ("Where two clauses or parts of a

written agreement are apparently in conflict, and one is general in character and the other is specific, the specific stipulation will take precedence over the general, and control it.").

Here, the forum-selection clause in the Settlement Agreement provides only that "the parties hereto" (including not only Plaintiff and Altum but also fellow departing executive Ali Ardakani) "irrevocably attorn to the jurisdiction of the Courts" of British Columbia.  Set. Ag. § 9.  In contrast, the forum-selection clause in the Release states that Plaintiff and Altum "irrevocably submit to the *exclusive* jurisdiction of the courts of British Columbia *with respect to any matter arising hereunder or related hereto*."  Rel. § 10 (emphases added).  The latter clause is more specific insofar as: (1) its application is limited to Plaintiff and Altum and does not include Ardakani; (2) it specifies that the parties not only consent to the jurisdiction of British Columbia courts, but also that they consent to the *exclusive* jurisdiction of those courts; and (3) it expressly encompasses "any matter arising hereunder or related hereto."  *Id.* Consequently, the clause in the Release prevails over the clause in the Settlement Agreement. *Accord Speedfit LLC v. Woodway USA, Inc.*, 642 F. Supp. 3d 429, 443 (S.D.N.Y. 2022) ("Here, paragraph 20 is the more specific provision of the contract, identifying the Eastern District of New York as the 'exclusive jurisdiction' for 'all claims or proceedings brought by a Party relating to this Settlement Agreement.'  Accordingly, to the extent there is inconsistency between paragraph 20 and the more general provisions of the contract . . . [,] paragraph 20 controls."); *WindServe Marine, LLC v. US Workboats, LLC*, No. 20-cv-00532 (ENV), 2021 WL 5749827, at *3 (E.D.N.Y. Apr. 16, 2021) (contract included two forum-selection clauses; one stated that the "parties agree that the jurisdiction shall be the United States District Court for the Eastern District of New York," while the other stated that the "parties hereby consent exclusively to venue in and jurisdiction of Onslow County Superior Court of North Carolina"; the court enforced the latter clause under "the general rule that a

mandatory forum selection clause – in which the parties designate a venue as the exclusive forum for disputes – is presumptively to be enforced, while a permissive forum selection clause – in which the parties simply agree that a particular forum may, among others, have jurisdiction – is not" (ellipsis and quotation marks omitted)).

In short, *Miller-Rich I* is consistent with settled principles of contract interpretation.[6]

### C. Plaintiff's Request for Rescission of the Settlement Agreement Does Not Vitiate the Forum-Selection Clause

Plaintiff further contends that "Altum's failure to pay the $400,000 consideration owing under the Settlement Agreement vitiated the Release given thereunder and revived Altum's liabilities under the Employment Agreement."  Recon. Br. at 3.  Essentially, Plaintiff's argument is that the Settlement Agreement (including the attached Release) should be rescinded, thus restoring the full operation of the Employment Agreement.  *See* Am. Compl. ¶¶ 108-109 ("By reason of Altum's material breach of the Settlement Agreement, Ms. Miller-Rich is entitled at her election to rescission and to seek recovery of the amounts due and owing under her Consulting and Employment Agreements. . . .  Alternatively, she may seek recover[y] of the amounts due under the Settlement Agreement."); *id.* at 28 (demanding, as one form of relief, "rescission of the Settlement Agreement or, in the alternative, compensatory damages in an amount to be determined at trial believed to be in excess of

---

[6] Plaintiff briefly notes that another section of the Release provides that the Release "shall not extend to or affect, or constitute a release of [Plaintiff's] right to sue, claim against or recover from Altum and shall not constitute an agreement to refrain from bringing, taking or maintaining any action against Altum . . . in respect of any claim under the [S]ettlement [A]greement . . . by [Plaintiff], which expressly survives any release contained herein." Recon. Br. at 4 n.1 (first ellipsis in original) (quoting Rel. § 3); *see also* Recon. Reply at 3. Plaintiff does not clearly explain the relevance of this language to her argument.  In any event, the Settlement Agreement's specific preservation of the right of the parties to bring suit for breach of the Settlement Agreement, notwithstanding the release of other claims, does not impact the forum-selection clause contained in the Release.

$2,00[0],000.00$"). But Plaintiff cites no authority for the proposition that, if a settlement agreement terminates a prior contract, the rescission of the settlement agreement automatically "revive[s]" the prior contract. Recon. Br. at 3.

Moreover, "Plaintiff cites no legal authority to support [her] argument that rescission of an agreement necessarily renders the forum selection clause within that agreement void. In fact, most courts that have considered the issue have rejected Plaintiff's argument." *Bella & Rosie Rock, LLC v. We Rock the Spectrum, LLC*, No. 17-cv-03628, 2018 WL 844398, at *3 (D.N.J. Feb. 13, 2018). After all, such an argument "puts the proverbial cart before the horse. Whether [Plaintiff] can rightfully rescind the [Settlement] Agreement is one of the questions that must be decided in this case. Interpretation of the forum selection clause is necessary to determine where the rescission claim will be tried." *Id.* (quoting *Wholesale Merch. Processing, Inc. v. Orion Commc'ns, Inc.*, No. 12-cv-02003, 2013 WL 1361863, at *4 (D. Or. Mar. 4, 2013), *report and recommendation adopted*, 2013 WL 1353048 (D. Or. Apr. 3, 2013)); *accord Dan Lepore & Sons Co. v. Torcon, Inc.*, No. 20-cv-06230, 2021 WL 1122178, at *4 (E.D. Pa. Mar. 24, 2021) (agreeing with *Wholesale Merchandise Processing*); *Hatteras Enters. Inc. v. Forsythe Cosmetic Grp., Ltd.*, No. 15-cv-05887 (ADS), 2016 WL 4083386, at *9 (E.D.N.Y. July 30, 2016) (same, and rejecting "the proposition that satisfying the requirements for the unilateral rescission of an agreement also renders a forum selection clause null and void"); *John Wiley & Sons v. Book Dog Books, LLC*, No. 13-cv-00816 (WHP), 2016 WL 1216583, at *2 (S.D.N.Y. Mar. 25, 2016) ("Book Dog also argues that its non-compliance with the forum-selection clause is excused because the Publishers breached the Settlement Agreement when they failed to advise Book Dog of investigations into pirated textbooks. But Book Dog's argument begs the question. The *purpose* of a forum-selection clause is to determine where to litigate a dispute about a contract."); *Madsen v. RBS Citizens,*

*N.A.*, No. 13-cv-00357, 2013 WL 2367836, at *7 (D. Conn. May 29, 2013) (similar); *Monster*

*Daddy, LLC v. Monster Cable Prods.*, 483 F. App'x 831, 835 (4th Cir. 2012) ("By including a

forum selection clause in the settlement agreement, the parties implicitly recognized that

disputes concerning the agreement could occur at a later date.  The forum selection clause

manifested the parties' intent regarding the forums where any such future disputes would be

resolved.  Because the forum selection clause was drafted to address the treatment of future

alleged breaches, any claim that the clause became unenforceable as a result of such a breach

is inconsistent with the very purpose of the clause." (citation omitted)); *Starlight Co. v.*

*Arlington Plastics Mach., Inc.*, No. 01-cv-01121, 2001 WL 677908, at *4 (N.D. Cal. June 8,

2001) ("[P]laintiff presents no cases where a court has rescinded an entire contract for the

purpose of invalidating a forum-selection clause.  Granting a rescission of the Contract to

invalidate the forum-selection clause would essentially give plaintiff the relief it seeks without

requiring it to prove its case."); *Margolis v. Daily Direct LLC*, 297 A.3d 144, 148 (Vt. 2023)

("Because forum-selection clauses are designed to govern the resolution of disputes, they,

unlike other contractual duties, survive repudiation absent some other reason for

unenforceability.").

     That Claims I, II, and III sound in fraud does not alter the Court's conclusion that they

are subject to the Release's forum-selection clause.  The Supreme Court has rejected the

notion "that any time a dispute arising out of a transaction is based upon an allegation of

fraud, . . . the [forum-selection] clause is unenforceable."  *Scherk v. Alberto-Culver Co.*, 417

U.S. 506, 519 n.14 (1974).  Instead, a "forum-selection clause in a contract is not enforceable

if *the inclusion of that clause in the contract* was the product of fraud or coercion."  *Id.*  This

rule is based on the principle that a "forum-selection clause is understood not merely as a

contract provision, but as a distinct contract in and of itself – that is, an agreement between the

parties to settle disputes in a particular forum – that is separate from the obligations the parties owe to each other under the remainder of the contract." *Marra v. Papandreou*, 216 F.3d 1119, 1123 (D.C. Cir. 2000); *accord Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70-72 (2010) (reaffirming this principle in the context of arbitration agreements); *cf. Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022) ("[A]n arbitration agreement is a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." (quotation marks and citation omitted)). Because Plaintiff "does not advance any argument that the [Release's forum-selection clause] was procured through fraud or overreach," the Court enforces the clause. *DarkPulse, Inc. v. Firstfire Glob. Opportunities Fund, LLC*, No. 23-78, 2024 WL 1326964, at *2 (2d Cir. Mar. 28, 2024) (summary order); *accord Auto. Logistics Productivity Improvement Sys., Inc. v. Burlington Motor Carriers, Inc.*, 986 F. Supp. 446, 449 (E.D. Mich. 1997).

In sum, the Release's forum-selection clause informs the Court's determination of "where [Plaintiff's] rescission claim will be tried." *Bella & Rosie Rock*, 2018 WL 844398, at *3 (citation omitted). Given that clause's broad language, the Court adheres to its decision in *Miller-Rich I* that Plaintiff's claims are subject to the forum-selection clause in the Release.[7]

---

[7] In her reply brief in support of her motion for reconsideration, Plaintiff also makes the new argument that non-signatories BetterLife and Dattels cannot benefit from the forum-selection clause in the Release because neither "has consented to *in personam* jurisdiction in British Columbia." Recon. Reply at 5. The Court need not reach this argument under the general rule that an argument is deemed waived when it is raised for the first time in a reply brief, especially when that reply brief is filed in support of a motion for reconsideration. *See Behrens v. JPMorgan Chase Bank N.A.*, No. 16-cv-05508 (VSB), 2021 WL 4134887, at *2 n.3 (S.D.N.Y. Sept. 9, 2021); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03-md-01529 (JMF), 2015 WL 268846, at *2 (S.D.N.Y. Jan. 21, 2015); *Mathew v. Walt Disney Co.*, No. 13-cv-03930 (JGK), 2014 WL 1795847, at *3 (S.D.N.Y. May 5, 2014). Even if it were to reach this argument, the Court notes that "a non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is closely related to another signatory." *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013) (quotation marks and citation omitted). *Magi XXI*

*          *          *

For the foregoing reasons, the Court concludes that Plaintiff has not identified "controlling decisions or data that the [C]ourt overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the [C]ourt." *Van Buskirk*, 935 F.3d at 54 (citation omitted).  Hence, the Court adheres to its decision in *Miller-Rich I* to dismiss the action without prejudice based on the forum-selection clause in the Release.

## II.    Alternative Analysis

The Court holds in the alternative that, even under the "plenary *forum non conveniens* review" that Plaintiff requests, Recon. Br. at 1, dismissal is justified.  Generally, "when a defendant moves to dismiss on the ground of *forum non conveniens*, courts assess: (1) the deference to be accorded the plaintiff's choice of forum; (2) the adequacy of the alternative forum proposed by the defendants; and (3) the balance between the private and public interests implicated in the choice of forum."  *Fasano v. Yu Yu*, 921 F.3d 333, 335 (2d Cir. 2019) (per curiam).  "The decision to dismiss a case on *forum non conveniens* grounds lies wholly within the broad discretion of the district court."  *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (en banc) (quotation marks and citation omitted).  Although a "defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum," *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007), the Appearing Defendants meet that burden here.

---

makes no mention of a non-signatory needing to expressly "consent[] to *in personam* jurisdiction in [the other forum]," Recon. Reply at 5, before enforcing a forum-selection clause against a signatory.

## A.  Deference to Plaintiff's Choice of Forum

"Any review of a *forum non conveniens* motion starts with 'a strong presumption in favor of the plaintiff's choice of forum.'"  *Norex Petrol. Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 154 (2d Cir. 2005) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)).  "In applying this general presumption, courts nevertheless recognize that the degree of deference given to a plaintiff's forum choice can vary with the circumstances."  *Id.* (brackets, quotation marks, and citation omitted).  "[F]actors that argue against *forum non conveniens* dismissal include the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense."  *Iragorri*, 274 F.3d at 72.  Factors that weigh in favor of *forum non conveniens* dismissal include "attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum."  *Id.*

In this case, the Court finds that Plaintiff's choice of a New York forum is entitled to some – but not substantial – deference.  To be sure, ordinarily "[g]reat deference is given when a plaintiff sues in its home forum."  *Glob. Art Exhibitions, Inc. v. Kuhn & Bülow Italia Versicherungsmakler GmbH*, 607 F. Supp. 3d 421, 436 (S.D.N.Y. 2022).  New York, however, is not properly deemed Plaintiff's "home forum" – New Jersey is.

Although Plaintiff alleges in the Amended Complaint that she "resides at 565 Broome Street, Apt. 22A, New York, NY 10013," Am. Compl. ¶ 2, she identifies herself as "a citizen of New Jersey," *id.* ¶ 12; *see id.* ¶ 29 ("Doroudian continued to recruit Ms. Miller-Rich during phone calls to her at her Soho Office and Morristown, New Jersey residence over the course

of the summer.").  In a declaration, Plaintiff clarifies that she has been "a citizen and resident

of New Jersey since 1988 where [she] lived and worked throughout [her] career with the

major pharmaceutical companies in New Jersey."  ECF No. 76 ("Miller-Rich Decl.") ¶ 2.  She

adds, however, that she and her husband acquired an apartment in Manhattan in 2017 and

have since "maintained dual residency in both New York and New Jersey."  *Id.*  Further,

numerous documents – including the Consulting Agreement, *see* Consult. Ag. at 4, and the

Employment Agreement, *see* Emp. Ag. at 1 – identify Plaintiff's address as being in

Morristown, New Jersey, *see also* ECF No. 64-10 at 2 (June 2018 email with Altum's chief

financial officer providing the name and address in which Plaintiff wanted to register stock);

ECF No. 64-11 at 2, 8 (2018 stock-option agreement); ECF No. 64-13 at 2 (consent to act as

director); ECF No. 64-14 at 4 (payroll form); ECF No. 64-15 at 2-4 (earnings statements);

ECF No. 64-16 at 2-4 (W-2s for 2018, 2019, and 2020); ECF No. 64-17 at 2-3, 5-8 (expense

reports); ECF No. 64-18 at 2, 10, 18, 26 (2019 stock-option agreements).  Taking all of these

statements and documents into consideration, the Court concludes that New Jersey, not New

York, is Plaintiff's home forum.  *See, e.g.*, *Lust v. Nederlandse Programma Stichting*, 501 F.

App'x 13, 14 (2d Cir. 2012) (summary order) (less deference given to plaintiff's choice of

New York as forum because plaintiff "was only a temporary resident in New York when he

filed his complaint"); *cf. Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000)

("Domicile [for purposes of the diversity statute] is the place where a person has his true fixed

home and principal establishment, and to which, whenever he is absent, he has the intention of

returning.  At any given time, a person has but one domicile.  Domicile . . . is presumed to

continue in the same place, absent sufficient evidence of a change." (quotation marks and

citations omitted)); *Kiss v. Kenny*, No. 22-cv-10663 (CS), 2024 WL 476388, at *3 (S.D.N.Y.

Feb. 7, 2024) ("Courts have long held that a statement of residence, unlike domicile, tells the

court only where the parties are living and not of which state they are citizens." (brackets and citation omitted)).

Of course, "[t]he benefit for a U.S. resident plaintiff of suing in a U.S. forum is not limited to suits in the very district where the plaintiff resides, especially considering that the defendant may not be amenable to suit in the plaintiff's district of residence." *Wiwa v. Royal Dutch Petrol. Co.*, 226 F.3d 88, 103 (2d Cir. 2000). Two other facts, however, further diminish the Court's deference to Plaintiff's choice of forum. First, it appears that many (if not most) of the relevant evidence and potential witnesses are in British Columbia, not New York. *See* ECF No. 64 ("Doroudian Decl.") ¶ 21 ("I am a citizen of Canada and long-time permanent resident and domiciliary of Vancouver, British Columbia."); *id.* ¶ 23 ("Each of Altum and BetterLife has headquarters – and always has had its headquarters – located in Vancouver, British Columbia."); *id.* ¶ 31 ("Neither Altum nor BetterLife maintains any business records, or any other documents, in New York. Instead, any business records – or other documents that might in any way relate to Plaintiff's claims – that might be in Altum's or BetterLife's possession, custody, or control are located in British Columbia."); *id.* ¶ 33 (similar); *cf.* Miller-Rich Decl. ¶ 4 (asserting that Plaintiff's counsel in New York has copies of "approximately a hundred emails in which defendant Dattels instructs Better[L]ife officers and directors"; also asserting that "Altum's corporate documents are electronically maintained by a third-party provider and readily accessible remotely"); *see, e.g.*, *Owens v. Turkiye Halk Bankasi A.S.*, No. 21-610, 2023 WL 3184617, at *2 (2d Cir. May 2, 2023) (summary order) ("minimal deference to plaintiffs' choice of forum" was warranted because, among other reasons, "almost all of the relevant evidence [wa]s located in Turkey and many of the potentially relevant witnesses [we]re Halkbank employees in Turkey and outside the subpoena power of this Court" (brackets, ellipses, and quotation marks omitted)); *Wamai v. Indus. Bank*

*of Kor.*, No. 21-1956, 2023 WL 2395675, at *2 (2d Cir. Mar. 8, 2023) (summary order) (similar); *Kingstown Cap. Mgmt., L.P. v. Vitek*, No. 20-3406, 2022 WL 3970920, at *3 (2d Cir. Sept. 1, 2022) (summary order) (similar).  Second, although the Court does not decide the issue, the Court recognizes that Dattels advances a colorable argument that the Court lacks personal jurisdiction over him.  *See* ECF No. 67-1 at 16-23; *see also* ECF No. 63 at 27-31 (the Altum Defendants also challenging personal jurisdiction).  "[T]he potential litigation concerning personal . . . jurisdiction in and of itself weighs against deferring to [Plaintiff's] choice of forum."  *Wamai*, 2023 WL 2395675, at *2 (quotation marks and citation omitted); *accord Kingstown*, 2022 WL 3970920, at *3 ("the district court also rightly noted that . . . the parties dispute whether the district court even has personal jurisdiction over all Defendants").

 For these reasons, the Court accords Plaintiff's choice of forum only some deference.

 **B.  Adequacy of Alternative Forum**

 "The deference given to a plaintiff's choice of forum does not dispose of a *forum non conveniens* motion.  It is only the first level of inquiry.  Even after determining whether the plaintiff's choice is entitled to more or less deference, a district court must still conduct the [rest of the] analysis."  *Iragorri*, 274 F.3d at 73; *see id.* at 74 ("There is no rigid rule of decision protecting U.S. citizen or resident plaintiffs from dismissal for *forum non conveniens*." (quotation marks and citation omitted)); *First Union Nat'l Bank v. Paribas*, 135 F. Supp. 2d 443, 448 (S.D.N.Y. 2001) ("While plaintiff's citizenship surely is a strong factor in its favor, its impact ultimately may be outweighed by a sufficiently robust showing in favor of an alternative forum."), *aff'd sub nom. FUNB v. Arab African Int'l Bank*, 48 F. App'x 801 (2d Cir. 2002) (summary order).  The Court thus turns to whether British Columbia is an adequate alternative forum.  *See Fasano*, 921 F.3d at 335.

"[T]he availability of an adequate alternative forum is required for *forum non conveniens* dismissal." *Aenergy, S.A. v. Republic of Angola*, 31 F.4th 119, 128 (2d Cir. 2022). "An alternate forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*, 665 F.3d 384, 390 (2d Cir. 2011) (citation omitted).  In this case, the Appearing Defendants have stipulated to accepting service of process in British Columbia, *see Miller-Rich I*, 2023 WL 8187875, at *5, and the Court has no reason to doubt that the British Columbia courts would "permit[] litigation of the subject matter" of this case, *Figueiredo*, 665 F.3d at 390 (citation omitted); *see, e.g.*, *In re iAnthus Cap. Holdings, Inc. Sec. Litig.*, Nos. 20-cv-03135, 20-cv-03898 (LAK), 2022 WL 4539119, at *12 (S.D.N.Y. Sept. 28, 2022) (deeming Canadian court to be adequate alternative forum for federal securities-law case), *modified on other grounds*, 2022 WL 19037215 (S.D.N.Y. Dec. 7, 2022); *In re Royal Grp. Techs. Sec. Litig.*, No. 04-cv-09809 (HB), 2005 WL 3105341, at *2 (S.D.N.Y. Nov. 21, 2005) (same); *Alfadda v. Fenn*, 966 F. Supp. 1317, 1332 (S.D.N.Y. 1997) ("Merely because plaintiffs allege securities fraud violations does not preclude a court from exercising its discretion to dismiss the action on the ground of forum non conveniens."), *aff'd*, 159 F.3d 41 (2d Cir. 1998).

Plaintiff protests that "[t]he state court declined to grant [Plaintiff's] application to require [the Appearing Defendants] to waive jurisdiction and limitations defenses in the event she elected to refile in British Columbia, requiring instead that the [Appearing Defendants] merely agree to accept service of process."  ECF No. 71 ("MTD Opp.") at 39.  Plaintiff asserts that "there is every reason to believe [that Dattels] would challenge personal jurisdiction in British Columbia and also assert the limitations bar."  *Id.*  As explained in *Miller-Rich I*, however, Plaintiff "provides no reason for concluding that the British Columbia Court would

lack personal jurisdiction over Dattels, . . . or that the statute of limitations would bar Plaintiff's suit against them there." 2023 WL 8187875, at *12. "Plaintiff merely expresses the vague concern that Dattels . . . *might* make such arguments," which is not enough. *Id.*; *see also Stevenson v. Thornburgh*, Nos. 23-cv-04458, 23-cv-04813 (CM), 2024 WL 645187, at *35 (S.D.N.Y. Feb. 14, 2024) ("In the United States, courts overwhelmingly hold that analysis of a foreign legal system's statute of limitations issues is more appropriately conducted by the foreign court.").

Altogether, the Court finds that British Columbia is an adequate alternative forum.

### C. Balance Between Private and Public Interests

The Court next addresses the balance between the relevant private and public interests. *See Fasano*, 921 F.3d at 335. "The factors pertaining to the private interests of the litigants include[] the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Piper Aircraft*, 454 U.S. at 241 n.6 (quotation marks and citation omitted). "The public factors bearing on the question include[] the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Id.* (quotation marks and citation omitted).

As explained in *Miller-Rich I*, 2023 WL 8187875, at *12, the public-interest factors do not particularly favor either side here. Plaintiff has represented (and the Court has no reason

to doubt) that "[t]he common law principles of breach of contract and fraud are the same in both [New York and British Columbia]," and that "[t]here is congestion in the courts in both jurisdictions."  MTD Opp. at 41.  Further, this case does not appear to qualify as a "localized controversy."  *Miller-Rich I*, 2023 WL 8187875, at *12 (brackets and citation omitted).

As for the private-interest factors, they considerably favor the Appearing Defendants. "Plaintiff is bringing claims related to her former employment with a British Columbian entity, whose corporate books and records are [evidently] located, in large part, in British Columbia, against, among others, her former employer living in British Columbia."  *Id.*; *see* Doroudian Decl. ¶¶ 21, 23, 31, 33.  Given the possible cost savings and reduced issues with compulsory process, "courts have regularly concluded that where most of the witnesses and documentary evidence reside in a foreign country, conducting trial in the U.S. could impose such significant burdens on the parties that dismissal is favored."  *RIGroup LLC v. Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546, 556 (S.D.N.Y. 2013) (brackets, quotation marks, and citation omitted), *aff'd*, 559 F. App'x 58 (2d Cir. 2014) (summary order).  So too here.

*          *          *

Considering the minimal weight accorded to Plaintiff's choice of forum, the availability of an adequate alternative forum in British Columbia, and the pro-British Columbia tilt of the private-interest factors, the Court concludes that – even under the traditional *forum non conveniens* analysis – dismissal of Plaintiff's complaint is warranted.

## CONCLUSION

Plaintiff's motion for reconsideration is DENIED.  The Clerk of Court is respectfully
directed to terminate the motion at ECF No. 81.

Dated: April 16, 2024
        New York, New York

SO ORDERED.

_Jennifer Rochon_

JENNIFER L. ROCHON
United States District Judge